**Charles H. DeBOW, Jr.**

v.

**The UNITED STATES.**

**No. 475–69.**

United States Court of Claims.

Dec. 11, 1970.

Hayden C. Johnson, Washington, D. C., attorney of record, for plaintiff.

Arthur E. Fay, Washington, D. C., with whom was Asst. Atty. Gen. William D. Ruckelshaus, for defendant.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

ON DEFENDANT'S MOTION AND
PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT

DAVIS, Judge.

In the first part of 1944, during World War II, plaintiff Charles DeBow, Jr., who had been trained as a combat pilot, was a captain in the Army Air Forces of the Army of the United States (the predecessor of the current Air Force) and in command of his squadron. In June of that year, his appointment as captain was terminated and he was demoted to first lieutenant. About a year later, in August 1945, he was released

from active duty as a first lieutenant, as part of the general demobilization. He remained in the reserve corps and was ultimately promoted there to captain and then major.

Dissatisfied with his 1944 demotion, plaintiff made several efforts over the years, through correspondence with the Army and later the Air Force, as well as with members of Congress, to have that demotion rescinded as unjust and illegal. He also asked, many times, that he be recalled to extended active duty as a flying officer. These attempts were unsuccessful, and in May 1965 he applied to the Air Force Board for Correction of Military Records, seeking an "Adjustment of rank" and complaining about the demotion. At first the Correction Board denied the request, but later, after a hearing, the Board reconsidered and recommended in 1968 that plaintiff's records be corrected to show that (i) his demotion from captain to first lieutenant in June 1944 was "void", (ii) he was released from active duty on August 1, 1945 as a captain, (iii) he was promoted to lieutenant colonel in the reserves effective January 30, 1967, and (iv) he was placed on the reserve retired list as a lieutenant colonel on February 1, 1967. This recommendation was adopted by the authorized delegate of the Secretary of the Air Force in January 1969, and was carried into effect.

In view of the character of plaintiff's claims in the present suit, it is important to note that in his application to the Correction Board, which was the basis of the 1965–1968 proceedings, he asked only that his 1944 demotion be voided and his rank adjusted, and at the administrative hearing his counsel asked the Board only to "set aside the reduction in rank", and to show release from active duty as a major in August 1945 as well as promotion to colonel in the reserves. In particular, counsel explicitly disavowed requesting any change in the date of release from active duty (August 1, 1945).

Conversely, no request was made that plaintiff be considered as remaining on active duty after August 1, 1945. Nor did plaintiff seek compensation as if he had remained on extended active duty beyond that date.

Some months after the successful completion of these Correction Board proceedings, plaintiff made another application to the Board, this time for a correction in the records to show no break in his service and continuous active duty after August 1, 1945 to February 1967 (when he was placed on the reserve retired list). This additional request was denied by the Board in July 1969 without a hearing. Again, it is significant that plaintiff's application expressly said that "I waive active duty pay from August 1945 to February 1967, since I did not actually perform the service", and the same statement (in substance) was made in his letter to the Board transmitting the application.

After the rejection of this second application, the Air Force tendered plaintiff a check for $702.70, said to represent the difference between the active duty pay and allowances of a first lieutenant and those of a captain, from the date of demotion (June 24, 1944) to his release from active duty (August 1, 1945).[1] This check has not been returned to the Government, but the record does not show whether or not it has been cashed.

Suit in this court was begun on November 12, 1969, by a petition which asked that plaintiff be granted active duty pay for the whole period from his release from active duty (August 1, 1945) to the date of his retirement in 1967. His theory now is that his release from active duty was improper because he would not have been released except for the invalid demotion of the prior year, and also that he should have been recalled to extended active duty after 1945 as he repeatedly requested. Both parties have moved for summary judgment, and

1. Also included were necessary adjustments for short periods of active training duty in the reserves in 1952 and 1955.

we find the case ready for disposition on those facts which are undisputed.

If it were not for the administrative correction of plaintiff's records early in 1969 to show that his 1944 demotion from captain to first lieutenant was void, it is beyond dispute, under our prior holdings, that his present claim would be firmly time-barred to the extent he claims active duty pay at all times since August 1, 1945. The basis for that claim (in the absence of the Board's correction) would be the separation from active duty on August 1, 1945 (perhaps in combination with the invalid demotion of the year earlier), and the claim would wholly accrue at that time at the latest, much more than six years before the filing in this court in 1969. See Mathis v. United States, 391 F.2d 938, 183 Ct.Cl. 145 (1968); Wood v. United States, 186 Ct. Cl. 955 (1968); Hixon v. United States, 186 Ct.Cl. 949 (1968).

The Correction Board's award of the record-change plaintiff sought—obliteration of the 1944 demotion as void—does not alter this result. We have held, it is true, that a claimant can often found a new cause of action, or a "continuing" claim, upon a favorable determination by the Correction Board (or comparable military tribunal) where that determination stops short of giving the full relief it was compelled in law to grant on the presentation then made. See Hankins v. United States, 183 Ct.Cl. 32, 34 (1968), and cases cited therein at note 1. But we have never applied that rule to a case, such as this, in which the claimant seeks to use the beneficial administrative determination as a springboard to obtain relief (within the Board's jurisdiction) which he disowned before the Board itself, or never sought from it, explicitly or implicitly. Here, as we have pointed out, plaintiff did not, as he could have, ask the Correction Board, in the proceeding in which he was vindicated, to change or remove the August 1, 1945 date of separation from active duty; on the contrary, his counsel specifically agreed that such a change was not being requested. In addition, plaintiff did not seek active duty pay after August 1, 1945, as he could have; and even in his later, unsuccessful, application to the Correction Board he disavowed such compensation. In these circumstances, it would subvert the functioning of the normal limitations rule for us to allow the plaintiff to skirt the time-bar by tying his claim to the favorable Board determination he received upon his representation that he was not asking that tribunal for the very relief he now prays from us. A major reason why we have extended the concept of a "new cause of action" or a "continuing claim" to petitions grounded upon a beneficial administrative determination which cuts off a claimant without the full relief he seeks, and to which he is entitled, is that, once the Board decides to give a remedy, it should not be free to slice the relief illegally or arbitrarily, sending the claimant forth with half-a-legal-loaf or even less. That reasoning has no pertinence to this case. With respect to the demotion in 1944 and the release-from-active-duty in 1945, plaintiff obtained all he asked for in his first, successful, proceeding. The Correction Board cannot be faulted.[2]

The other facet of the claim in this court is that the Air Force should have recalled plaintiff to extended active duty in the years after 1945, as he repeatedly asked. In largest part, this aspect of the petition is also barred by limitations, since the successive active-duty applications were made before November 1963.[3] For the rest, the simple

2. Of course, the later, unfavorable Board determination had no effect on limitations since Board denials or rejections of applications (unlike favorable determinations) do not (in separation, removal, or demotion cases) toll the statute or give rise to a new claim. That is one of the holdings of the Mathis case, *supra*.

3. Plaintiff did not raise his rejection for recall to active duty until his second, unsuccessful, application to the Correction Board. The same reasoning with respect to limitations therefore applies to this portion of the claim as to the full demand for active duty pay for the entire period after August 1, 1945.

**1336**

answer is that plaintiff was a reservist not a regular Air Force officer (the record makes this absolutely clear), and it is within the Air Force's discretion whether or not to call a reserve officer to active duty.[4] There is no showing or adequate offer to prove that this discretion was abused. Without such a presentation, we cannot hold for him on this point. Anthony v. United States, 179 Ct.Cl. 923 (1967); Merriott v. United States, 163 Ct.Cl. 261, 264 (1963), cert. denied, 379 U.S. 838, 85 S.Ct. 76, 13 L.Ed.2d 45 (1964). See, also, on the comparable discretionary matter of promotion, Clinton v. United States, 423 F.2d 1367, 1368, 191 Ct.Cl. 604, 606–607 (1970).

For these reasons, defendant's motion for summary judgment is granted, plaintiff's is denied, and the petition is dismissed.[5]

---

4. The applicable statute, 10 U.S.C. § 672 (d) (1964 ed.), provided that the service "may" order a member of a reserve company to active duty at any time with the member's consent, and also, 10 U.S.C. § 681(a) (1964 ed.), that the Secretary "may at any time release a Reserve under his jurisdiction from active duty."

5. As indicated above, the Air Force sent plaintiff a check for $702.70 in full satis-

faction of the money properly owing him under the Correction Board's favorable determination. Plaintiff has previously said that the correct sum is $745.04, but in court he has not pressed the slight difference in amount and therefore we do not undertake to resolve this minor dispute or send it to a trial commissioner for determination.