SkeltoN, Judge,
delivered the opinion of the court:
On August 19,1944, the plaintiff, Marion G. Denton, while *191 holding the rank of major, was released from active duty and dismissed as an officer in the United States Army Air Corps Eeserve, pursuant to a general court-martial. Nine years later, on September 24, 1953, he applied to the Board for Correction of Military Records for a correction of his military record. Item seven of the plaintiff’s application contained his complete request for relief, and read in full as follows:
7. I request the following correction of record (State the exact record for which a correction is requested and in what particular)
Vacation of findings and sentence of general court martial convened at Mitchell Field, New York, 27 September 1943, pursuant to Special Orders 234, 24 August 1943, and 266, 25 September 1943, Headquarters First Air Force.
The Correction Board denied the application.
In 1963, the plaintiff again requested the Air Force Board for the Correction of Military Records to correct his military records. The application before the Correction Board in 1963, including the request for relief, was exactly the same as the application filed by the plaintiff in 1953, which is quoted above. The Board conducted a hearing on May 1, 1963. Thereafter, pursuant to recommendations by the Chairman of the Air Force Board for the Correction of Military Records, the Assistant Secretary of the Air Force, on March 19, 1964, directed that the findings and sentence of plaintiff’s court-martial be ‘‘set aside so that all rights, privileges, and property of which said member [plaintiff] may have been deprived by virtue of the findings, sentence and execution thereof, be restored.” He also directed that plaintiff’s military records be corrected to show that the plaintiff was released from extended active duty d/m to demobilization effective September 2,1945; and he ordered that all necessary and appropriate action be taken in consonance with his directive.
On November 30, 1965, the plaintiff again applied for correction of his military records. As may be seen below, this application requested relief that was new and different *192 from that requested in 1953 and 1968. His 1965 application requested relief as follows:
The order of the Board of 19 March 1964 providing that “* * * all rights, privileges, and property of which said member may have been deprived * * * be restored,” be specifically amended to provide service beyond 2 Sept. 1945, and on determination of such date terminal promotion to Lieut. Colonel be provided, and to Colonel on 1 April 1953, and to Brigadier General on 30 November 1956.
Pay
1. Active duty pay from 19 Aug 1944 to separation date.
2. Drill pay as Lieut. Colonel from separation date to 1 April 1953.
3. Drill pay of Colonel from 1 April 1953 (date all reserve officers were tendered new commissions) to 29 November 1956.
4. Accrued leave of 90 days on determined separation date.
Points
All points eamable for retirement from separation date to 29 November 1956.
* ij: * * #
It is important to note that the relief requested in this 1965 application was not requested in plaintiff’s 1953 or 1963 applications as it could have been.
After a hearing, the Board recommended that corrections be made to the plaintiff’s military records. On October 4, 1966, the Undersecretary of the Air Force directed that plaintiff’s records be corrected as follows:
MEMORANDUM FOR THE CHIEF OF STAFF
■Having received and approved the recommendations of the Air Force Board for the Correction of Military Records and under authority of Section 1552, Title 10, United States Code (70A Stat. 116), it is directed that:
1. The pertinent military records of the Department of the Air Force, relating to MARION G. DENTON, 0-150 432, be corrected to show that he was not released from extended active duty on 2 September 1945.
*193 2. The pertinent military records of the Department of the Air Force, relating to MARION G. DENTON, 0-150 432, be corrected to show that he was tendered and placed on 90 days terminal leave effective 2 September 1945.
3. The pertinent military records of the Department of the Air Force, relating to MARION G. DENTON, 0-150 432, be corrected to show that he was eligible for promotion under the terminal leave promotion policies in effect and promoted to grade of 'Lt. Colonel, Air Reserve, Officer Reserve Corps, effective 1 November 1945.
4. The pertinent military records of the Department of the Air Force, relating to MARION G. DENTON, 0-150 432, be corrected to show that he was relieved from extended active duty due to demobilization, effective 2 September 1945 and reverted to inactive status on 2 December 1945.
5. The pertinent military records of the Department of the Air Force, relating to MARION G. DENTON, 0-150 432, be corrected to show that he was promoted to grade of Colonel, Reserve of the Air Force, effective 31 March 1953.
6. The pertinent military records of the Department of the Air Force, relating to MARION G. DENTON, 0-150 432, be corrected to show that he was tendered an indefinite term appointment as Colonel, Reserve of the Air Force on 1 April 1953, and that he accepted the appointment on the same date.
7. The pertinent military records of the Department of the Air Force, relating to MARION G. DENTON, 0-150 432, be corrected to show that he accrued 35 Inactive duty points and 15 Gratuitous points for a total of 50 points during each of the following periods; and that each period is a satisfactory year of Federal service for retirement purposes:
1 July 1949 to 30 June 1950
1 July 1950 to 30 June 1951
1 July 1951 to 30 June 1952
1 July 1952 to 30 June 1953
1 July 1953 to 30 June 1954
1J 1954 to 30 June 1955
1 July 1955 to 30 June 1956
8. Upon submission of an appropriate application, the pertinent military records of the Department of the Air Force relating to MARION G. DENTON, 0-150 *194 432, be corrected to show that he retired in grade of Colonel, Eeserve of the Air Force, under the provisions of Section 1331, Title 10, USC, on 30 November 1956, with entitlement to retired pay effective 1 December 1956.
9. All necessary and appropriate action be taken in consonance with this Directive.
On April 25,1967, the plaintiff received $42,511.57 as payment for sums due him as a result of the corrections to his records. Since October 1966, he has been receiving monthly retirement checks.
On August 17, 1972, the plaintiff filed a petition in this court seeking a judgment against the United States for the following: (1) back pay, allowances, and all other emoluments of a major in the United States Air Force Eeserve on active duty from September 2, 1945, to March 19,1964; (2) back retirement pay and all other emoluments due a retired colonel in the United States Air Force Eeserve from March 19,1964, to the date of judgment; and (3) an order to the defendant to pay plaintiff as a retired colonel in the United States Air Force Eeserve. The case comes to us on cross motions for summary judgment, and is ready for disposition on those facts which are undisputed.
The plaintiff contends that the October 4,1966, decision by the Undersecretary of the Air Force was arbitrary and contrary to law. He argues that neither the Correction Board nor the Secretary of the Air Force has the power to backdate a reserve officer’s release from active duty. Therefore, he asserts that as a matter of law he remained on active duty from the date of his wrongful discharge until March 19,1964, when he was discharged by corrective action. Alternatively, the plaintiff contends that even if power exists to take corrective action by backdating a release, the use of such power in this case constitutes an arbitrary and capricious abuse of discretion.
The defendant asserts that the plaintiff’s cause of action is barred by the statute of limitations. It also contends that the plaintiff’s failure to present his claim before the Correction Board bars his action in this court. Alternatively, *195 the defendant maintains that the Air Force Board acted within its power and discretion in backdating the plaintiff’s release from active duty.
The statute of limitations, 28 U.S.C. §2501 (1970), bars any claim “unless the petition thereon is filed within six years after such claim first accrues.” In DeBow v. United States, 193 Ct. Cl. 499, 503, 434 F. 2d 1333, 1335 (1970), cert. denied, 404 U.S. 846 (1971), we reaffirmed our earlier holdings “that a claimant can often found a new cause of action, or a ‘continuing’ claim, upon a [first] favorable determination by the Correction Board (or comparable military tribunal) where that determination stops short of giving the full relief it was compelled in law to grant on the presenter tion then made? [Emphasis supplied.] The instant case involves two Correction Board determinations which were favorable, in the sense that some relief was granted to the plaintiff in both Board decisions. The Assistant Secretary of the Air Force acted on the first favorable determination on March 19,1964, more than six years before August 17,1972, the date on which the plaintiff filed a petition in this court. So, the first issue in this case is whether or not the plaintiff can successfully claim that his cause of action arose on October 4, 1966, the date on which the Undersecretary of the Air Force acted on the second favorable determination. If not, his claim is barred by limitations.
We held in DeBow that a major reason for allowing a cause of action to be based on an initial favorable administrative determination, that would otherwise be barred by limitations, is that once an administrative body decides relief is proper on the claim and presentation then made, it should not be free to illegally or arbitrarily award less relief than that x’equested by the claimant in that proceeding. In the context of the correction of a military record, this means that once a discretionary decision is made to correct a record, the grant of appropriate money relief is not discretionary but automatic. Ray v. United States, 197 Ct. Cl. 1, 453 F. 2d 754 (1972). If appropriate payment is not then made, a cause of action accrues in this court at that time. Ray, supra. In this case, however, the appropriate payment has been *196 made and plaintiff seeks only a new discretionary correction of his record. In these circumstances, the 1966 record correction is a nullity so far as concerns the accrual of a cause of action and whatever cause plaintiff has accrued in 1964 or earlier, and is now time barred.
The plaintiff contends that we should not consider the 1964 decision by the Correction Board final for the purposes of the statute of limitations because the 1965-1966 proceedings involved a reopening of the 1964 decision. This court has held that an administrative body’s reopening of an earlier decision may, under certain circumstances, deprive that decision of finality for limitations purposes until a subsequent decision is reached. Schiffman v. United States, 162 Ct. Cl. 646, 319 F. 2d 886 (1963); Friedman v. United States, 159 Ct. Cl. 1, 310 F. 2d 381 (1962) cert denied, 373 U.S. 932 (1963); Capps v. United States, 133 Ct. Cl. 811, 137 F. Supp. 721 (1956). However, in Robinson v. United States, 163 Ct. Cl. 235, 237 (1963), we further explained those cases by saying “[t]he ‘reopening’ to which Friedman refers (see p. 16, 310 F. 2d at 391) is of the kind which was present in Gapps v. United States, * * * and Schiffman v. United States, * * * — where the service itself moved to accord the plaintiff a new hearing on the basis of a new regulation or interpretation of the law.” Under this approach, the fact that the parties and Correction Board call the new proceedings a “reopening,” as they did in the instant case, has no effect on whether or not the proceedings are the type of reopening which tolls the running of limitations. In the case at bar, rather than the Air Force moving to accord the plaintiff a new hearing, the plaintiff himself requested new proceedings. Additionally, there was no change in regulations or interpretation of the law between the 1964 decision and the request for new proceedings in 1965. Therefore, the 1964 decision was not “reopened” by the later proceedings in any manner that affects the running of the limitations period.
We know of no reason why the 1965-1966 proceedings involved in the instant case should be held to bar the 1964 decision of finality. In 1964, the plaintiff received all the relief he had requested in his application to the Correction *197 Board. He requested no more than a vacation of the findings and sentence of his general court-martial of 1943, and that is exactly what he received. None of the relief requested by the plaintiff’s 1965 application to the Correction Board was requested, as it could have been, in his 1963 application. We see no reason why proceedings initiated by an application for entirely new relief, which could have been requested prior to an earlier favorable decision, should deprive the earlier decision, which granted all the relief requested, of finality. Therefore, the 1964 decision was final for the purpose of beginning the limitations period.
The plaintiff’s 1965 claim before the Correction Board grew out of the same transaction or occurrence, the findings and sentence of the general court-martial of 1943, as his 1963 claim. Additionally, all the relief requested by the plaintiff in 1965 could have been requested in 1963. In other words, during the time between the two applications, no change occurred in the facts, or law, which was relevant to the plaintiff’s right to recover. Therefore, as the discussion above indicates, the 1966 favorable decision by the Correction Board and the Undersecretary did not affect the running of the limitations period which began with the 1964 favorable determination. Since the plaintiff filed his petition in this court more than six years after the 1964 decision, his claim is barred by our statute of limitations.
Even if the plaintiff could base his cause of action on the 1966 decision by convincingly arguing that the 1964 decision was not final, which he cannot, he still could not prevail. When the plaintiff filed his application with the Correction Board in 1965, he did not request either a discharge as of March 19,1964, or active duty pay for the period from September 2, 1945, until March 19, 1964, both of which he is claiming in the instant suit. His active duty pay claim before the Board in 1965 covered only the period from August 19, 1944, until his separation date. Since he requested drill pay from his separation date until April 1, 1953, his application indicates that at most he claimed that his separation date should be after September 2, 1945, and sometime before *198 April 1,1953; and that he should receive active duty pay for the period ending on such separation date. The plaintiff does not contend that at any time during the 1965-1966 proceedings he attempted to extend his claim beyond what he indicated in his application. As can be seen, the claim he asserted during the 1965-1966 proceedings was very different from his claim here that the Correction Board’s lack of power to backdate his discharge entitles him to active duty pay for the period from September 2, 1945, until March 19, 1964.
Although a claimant may be able to base a cause of action upon a Correction Board’s favorable determination, this court plainly held in DeBow that a plaintiff may not use a “beneficial administrative determination as a springboard to obtain relief (within the Board’s jurisdiction) which he disowned before the Board itself, or never sought from it, explicitly or implicitly.” [193 Ct. Cl. at 503, 434 F. 2d at 1335.] In DeBow, we dismissed the plaintiff’s petition because he asked for relief which he had not sought before the Correction Board. The only events, other than the Correction Board action, on which he could base his claim were barred by the statute of limitations.
We believe the DeBow holding applies to the instant case. As we indicated in DeBow, a favorable Board determination can be used as the basis for a cause of action only when the claimant’s contentions before the Correction Board should have put the Board on notice as to the nature of the claim later asserted in this court. A claimant should not be allowed to avoid the usual limitations bar by contending that a Correction Board acted arbitrarily or illegally by failing to approve a claim of which the Correction Board never had notice. In the case at bar, the plaintiff failed to put the Correction Board on notice as to the nature of the claim he now asserts in this court. This failure is shown above by the considerable difference between the relief sought in the plaintiff’s 1965 application to the Correction Board and the relief sought in the plaintiff’s petition in this court. Therefore, the plaintiff may not base his cause of action on the 1966 decision by the Correction Board and the Undersecretary of the Air Force. Since all events on which the plaintiff could *199 possibly base his cause of action occurred more than six years before he filed his suit in this court, and since he claims relief here he never claimed before the Board, he has no basis for a cause of action in this court.
Even if we assume arguendo that the plaintiff put the Correction Board on notice as to the nature of his claim in this court, and that he can escape the limitations bar, he still cannot prevail. 10 U.S.C. § 1552 (1970)[1] grants to the Secretary, acting through the Correction Board, the power to correct records when a correction is necessary to rectify an error or remove an injustice. In Kimmel v. United States, 196 Ct. Cl. 579 (1971), this court held that section 1552 entitles a complainant to nothing more than placement in the same position he would have been had no error been made. The plaintiff in the instant case has indicated no purpose of the statute, and we know of no purpose, that would be better served if the Correction Boards were required to grant more relief than that stated in Kimmel.
The task of removing the injustice of an improper discharge or release can best be accomplished, and the purpose of the statute best effectuated, if the Correction Boards (more correctly, the Secretaries acting through the Correction Boards) have considerable discretion to apply their expertise to the varying situations they confront. Many factors, such as the needs of the armed services and the characteristics of the particular individual involved, can affect the date on which a serviceman would have been discharged had an improper discharge never occurred. In a case such as the one at bar where the original discharge is not invalidated until many years after it occurred, such factors certainly might indicate that the complainant would have been discharged prior to the invalidation date. There *200 fore, we think the discretionary power granted to the Correction Boards by section 1552 includes the power to backdate discharges where such backdating places the claimant where he likely would have been absent the improper discharge. Tn fact, this court has previously approved the backdating of discharges and releases by Correction Boards. O'Callahan v. United States, 196 Ct. Cl. 556, 451 F. 2d 1390 (1971); Mercereau v. United States, 155 Ct. Cl. 167 (1961).
In several previous cases involving officers in the armed forces, this court held that Correction Boards acted improperly by backdating discharges. Hamlin v. United States, 183 Ct. Cl. 137, 391 F. 2d 941 (1968); Motto v. United States, 172 Ct. Cl. 192, 348 F. 2d 523 (1965); Egan v. United States, 141 Ct. Cl. 1, 158 F. Supp. 377 (1958). The plaintiff contends that these cases support his position in the instant case. However, all of these cases are decisively distinguishable from the case at bar.
All of these cases except Egan involved regular officers in the armed forces. Kegular officers possess indefinite commissions, and, therefore, their status in the armed forces is different from the status of other personnel. O'Callahan v. United States, 196 Ct. Cl. at 560, 451 F. 2d at 1392, and cases cited therein. Keserve officers do not possess indefinite commissions. With exceptions not relevant to the instant case, reserve officers, such as the plaintiff, can be released from active duty at any time under 10 U.S.C. § 681 (a) (1970).[2] We know of nothing which indicates that the status of reserve officers was any different on the date to which the plaintiff’s release was backdated. So, while regular officers may be able to successfully attack the backdating of a discharge as contrary to law, section 681(a) prevents reserve officers from succeeding in such a broad attack.
Even though Egan, involved a reserve officer, this court has previously distinguished that case from cases such as the one at bar. In Merriott v. United States, 163 Ct. Cl. 261, 265 *201 (1963), cert. denied, 379 U.S. 838 (1964), we stated as follows:
* * * lu Egm, the officer was illegally and erroneously released to inactive duty in October 1943, and then illegally discharged from the Marine Corps Keserve in April 1944, on the ground that he was insane (which he was not); if the true facts had been known it would have been highly unlikely that a healthy Marine Corps combat officer would have been released in the very midst of World War II; in fact, no reason for such a release at that time appeared in the record * * *.
Because the record in Egan indicated no reason or basis for backdating the release to the selected date, the Correction Board’s action was found to be arbitrary and was not allowed to stand.
In the instant case, the Correction Board did not act arbitrarily in backdating plaintiff’s release. The release was backdated to a date near the end of World War II, a time when many reserve officers were released from active duty because they were no longer needed. This court approved a similar release in Merriott where an Army Disability Be-view Board found that the plaintiff in that case had been improperly released from active duty on January 1, 1945, by reason of physical disability. Even though the Beview Board reversed the earlier finding that the plaintiff in Merriott was incapacitated for active duty, it refused to grant any relief, and, therefore, left the plaintiff’s release date at January 1,1945. In refusing to find that the Beview Board acted arbitrarily, we said that the plaintiff obtained a release which “came too close to the end of World "War II for the court to speculate that, unlike millions of other reservists, he would have been kept on active duty.” [163 Ct. Cl. at 264.] As with the plaintiff in Merriott, the plaintiff in the instant case received a release as of a date reasonably related to the events surrounding that date. Therefore, he cannot successfully claim that the Correction Board acted arbitrarily by backdating his claim.
For the reasons stated above, the defendant’s motion for summary judgment is granted, the plaintiff’s motion for summary judgment is denied, and plaintiff’s petition is dismissed.

 10 U.S.C. § 1552 (1970) reads in pertinent part as follows: “§ 1552. Correction of military records: claims incident tliereto.
“(a) The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice. • * *"

 10 U.S.C. § 681(a) (1970) provides in pertinent part as follows : “§ 681. Reserves : release from active duty.
“(a) Except as otherwise provided in this title, the Secretary concerned may at any time release a Reserve under his jurisdiction from active duty.”