"This military pay claim comes before the court on cross-motions for summary judgment. The issue most hotly debated by the parties concerns the statute of limitations, an issue which we find dispositive.
"Plaintiff, with roughly 9 years’ prior creditable service, re-enlisted in the Air Force on January 30, 1955. In 1956, while serving in Japan, plaintiff was reduced from staff sergeant to airman first class pursuant to article 15 of the Uniform Code of Military Justice, 10 U.S.C. § 815, for failing to pay just debts. Later in that same year he was convicted by summary court-martial for wrongfully and dishonorably failing to pay just debts, and he was reduced to airman second class and restricted for 60 days. Shortly thereafter, he was convicted by summary court-martial of breaking restriction, resulting in his demotion to airman basic, a 30-day confinement, and a $25 forfeiture of pay. Plaintiff entered guilty pleas at both courts-martial. On December 21, 1956, pursuant to AFR-39-17, plaintiff was *390 discharged from the Air Force 'under other than honorable conditions’ and given an undesirable discharge certificate.
"His first of many petitions to the Air Force Board for the Correction of Military Records was filed on February 28, 1958. He requested that his undesirable discharge be changed to an honorable one, but the board denied relief. A similar request made in 1960 was denied in 1961. Two additional petitions, filed in 1961 and 1962, sought correction "of all error and injustice”; both were also denied. In 1963, he again requested a change in the character of his discharge. A hearing was held, leading the correction board to conclude in 1965 that the evidence failed to demonstrate a dishonorable intent on the part of plaintiff to defraud any of his creditors. On July 2, 1965, the Assistant Secretary of the Air Force ordered that plaintiffs records be corrected to show that plaintiff had been given an honorable discharge as of December 21, 1956, for the convenience of the Government under AFR-39-14.
"In 1968, plaintiff again petitioned the correction board, this time asking for restoration of his rank of staff sergeant, for a change in his date of discharge to January 29, 1961 (the normal expiration of his enlistment), and for moneys found due in accordance with such corrections. The request was denied. In 1969, another petition was filed, requesting his rank be changed to staff sergeant; this, too, was denied. His next petition, filed in 1972, sought a change in rank to staff sergeant and renewed the request that the date of discharge be changed to January 30, 1961. The correction board sought advice from the Office of the Judge Advocate General, who advised that since the correction board had found that plaintiff did not dishonorably fail to pay debts as found in the article 15 action and first summary court-martial, they could be set aside. Further, because plaintiff was not represented by counsel at his second court-martial, which resulted in confinement, it should be set aside. On September 12, 1974, plaintiff was advised by the board that his records were being corrected to void the nonjudicial punishment imposed as a result of the article 15 proceeding and to vacate the findings and sentence in the two summary courts-martial. Thereafter, plaintiff was sent a check for $323.76, representing an adjustment in pay and accrued leave and the refund of his forfeiture.
"In December 1974, plaintiff wrote to the correction board asking that his rank and date of discharge be *391 changed to January 30, 1961, but the board denied that request in January 1975. In February 1975, plaintiff asked that his records be corrected to show he had been on continuous active duty and that he be returned to active duty so that he might qualify for retirement. This request was denied in January 1976. In August 1976, plaintiff requested, through civilian counsel, reconsideration of the board’s denial of the February 1975 application, but in September the board denied relief on this, the plaintiffs tenth appeal to the board.
"He filed suit in this court on October 27, 1976.
"This detailed recitation of the facts has been necessary because of the technical nature of the parties’ arguments concerning application of the statute of limitations. Plaintiff concedes that his petition here was filed more than 20 years after plaintiffs discharge from the Air Force in 1956, but he advances three arguments for why the normal 6-year statute of limitations, 28 U.S.C. §2501, should not bar his claim.
"Plaintiffs first argument invokes our 'half-a-legal-loaf doctrine, stated in such cases as DeBow v. United States, 193 Ct. Cl. 499, 434 F.2d 1333 (1970), cert. denied, 404 U.S. 846 (1971), where the court held:
* * * that a claimant can often found a new cause of action, or a 'continuing’ claim, upon a favorable determination by the Correction Board (or comparable military tribunal) where that determination stops short of giving the full relief it was compelled in law to grant on the presentation then made. * * * [193 Ct. Cl. at 503, 434 F.2d at 1335.]
The application of this doctrine is dependent, however, upon a showing that a party has been denied the full relief appropriate (if requested) for the claim which the board has recognized; relief here requires that plaintiff have a monetary claim that is no longer dependent upon administrative determination. Eurell v. United States, 215 Ct. Cl. 273, 278, 566 F.2d 1146, 1148-49. Plaintiff contends that the 1974 decision to erase his court-martial convictions meets this standard because that determination compelled the board also to change the date of his discharge.
"Plaintiff cannot show us why the removal from his record of the court-martial convictions automatically entitles him to have the date of his discharge changed from 1956 to 1961, covering years in which he rendered no *392 service. We have not been shown that the Secretary violated any restrictions on his power to grant an honorable discharge before the enlistment period expired. Plaintiffs record, as it stood in 1974, showed that such a discharge had been granted 'for the convenience of the Government.’ The removal of the convictions did not require the board, as a matter of law, to determine that plaintiff had served the full term of his enlistment or to change the effective date of his honorable discharge. Accordingly, plaintiffs claim here does not present a situation where the correction board has failed to grant all relief necessitated by the findings it has made upon the relief requested within our limitations period. To the contrary, the board has granted the relief required by its findings. Plaintiffs good name has been restored through the upgrading of his discharge and the expungement of his convictions. Of course, the board was free to go further and to change plaintiffs records to show he was discharged at a later date. But that determination was for the board to make; the court will not intrude itself upon the record correction process in the manner requested by plaintiff and where there is no abuse of board discretion or legal error. We conclude there is no basis for the application of that part of the DeBow doctrine plaintiff relies on here. We note that DeBow also stands for the proposition that the so-called continuing claim theory of limitations is not applicable to claims for active duty pay based on an alleged illegal discharge. The claim, if any, accrues all at once upon the plaintiffs removal from military service. See also Mathis v. United States, 183 Ct. Cl. 145, 391 F.2d 938 (1968). This is well established in Court of Claims precedents, but plaintiff cites United States v. One 1961 Red Chevrolet Impala Sedan, 457 F.2d 1353 (1972), for the proposition that the period of limitations does not always begin to run on the date of the wrong — that no cause of action accrues until plaintiff had a right to enforce his cause. Plaintiff also cites Griffin v. United States, 110 Ct. Cl. 330, 77 F.Supp. 197 (1948), which held that the time when a claim can be definitely ascertained and set up governs the time when the statute of limitations starts to run. These cases do not help plaintiff who could have sued as early as 1956, when he was discharged. Indeed, he commenced the prosecution of his many permissive applications to the correction board soon after discharge.
*393 "Plaintiffs next argument is that his claim did not accrue until 1973, when the Court of Military Appeals declared unconstitutional court-martial convictions resulting in confinement where the accused was not represented by counsel. See United States v. Alderman, 22 USCMA 298, 46 CMR 298 (1973).[1] Plaintiff reasons that his claim arose only after that decision because until then it would have been possible for the correction board and the court to determine that plaintiffs final court-martial conviction was proper and furnished a sufficient basis for plaintiffs discharge. What this argument overlooks is that the records being reviewed in 1974 showed plaintiff had been discharged honorably, for the convenience of the Government, and that no valid court-martial convictions were necessary to substantiate that discharge. We note too that plaintiffs first identifiable request for a change in the date of his discharge was made in 1968 (5 years before the Alderman decision) and could as well have been made in 1963, when he first successfully petitioned the correction board for relief. We summarily reject as completely unpersuasive plaintiffs view that his general allegation in 1961 for correction of 'all error and injustice’ put defendant on proper notice that he wanted his discharge date changed from 1956 to 1961, an issue he did not identify until his application to the correction board in 1968.
"Plaintiffs third route to toll the statute of limitations is to argue that the 1974 tender by the Government of a check for $323.76 in back pay (which remains uncashed) permits plaintiff to assert his claim. This argument is premised on the assertion that the amount tendered was inadequate, yet there is no showing that such is the case. The sum was computed with reference to periods before his discharge and includes a pay adjustment necessitated by the voiding of his convictions (the reduction in rank being thus voided) and return of the fine plaintiff paid after his last conviction. Plaintiff casts this argument as subsidiary to his 'half-a-legal-loaf argument, which we have rejected above.
"We conclude, then, that plaintiff has not shown any acceptable reason why the statute of limitations should not bar his claim.
*394 "IT IS THEREFORE ORDERED, upon the written and oral arguments of the parties, that plaintiffs motion for summary judgment is denied, defendant’s cross-motion for summary judgment is granted, and the petition is dismissed.”

 The result in that case was specifically disapproved by the Supreme Court holding in Middendorf v. Henry, 425 U.S. 25 (1976).