Alvin Dean BRUTON, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 95–28C.

United States Court of Federal Claims.

Oct. 31, 1995.

Alvin D. Bruton, Socorro, New Mexico, pro se.

Brian S. Smith, with whom were Assistant Attorneys General Frank W. Hunger, David M. Cohen, and James M. Kinsella, Washington, DC, for defendant. Lt. Col. David L. Hayden and Maj. Kevin J. Chapman, Department of the Army, Office of the Judge Advocate General, of counsel.

## OPINION

BRUGGINK, Judge.

This action for military back pay is brought by former Staff Sergeant Alvin Dean Bruton ("SSG Bruton") pursuant to 37 U.S.C. § 204 (1988) and 28 U.S.C. § 1491 (1988). SSG Bruton seeks to have his honorable discharge set aside on the ground that it was involuntary. The discharge was effectu-

ated at the enlisted man's request after he was notified that he was barred from reenlistment at the expiration of his tour of duty. SSG Bruton's appeals to the Army Board for Correction of Military Records ("Board") resulted in the expungement of the bar to reenlistment and a recharacterization of his discharge as one for the convenience of the service, but the Board declined to reinstate the serviceman.

Pending is defendant's motion to dismiss pursuant to RCFC 12(b)(1) based on the apparent untimeliness of the complaint. Defendant also contends that, even if the complaint was not filed too late, the matter is not justiciable. In addition, the parties have submitted the entire matter on cross motions for summary judgment.

The action was filed more than six years after SSG Bruton was discharged from the Army. Because SSG Bruton appears *pro se,* and because the facts suggest the possibility that the limitations period should be tolled, the court asked for additional submissions addressing the latter question. Oral argument is deemed to be unnecessary. After considering the parties' submissions, the administrative record, and the applicable law, the court concludes that the action is not timely brought, yet defendant's motion to dismiss should be granted on the more fundamental ground that the court lacks jurisdiction to hear SSG Bruton's claim. SSG Bruton's cross-motion for summary judgment is denied.

## BACKGROUND

SSG Bruton enlisted in the Army on November 8, 1977. On January 18, 1985, while serving as a Staff Sergeant at pay grade E–6, he reenlisted for a term of five years ending on January 17, 1990. On October 5, 1987, SSG Bruton's company commander, Captain Hobert A. Baker ("Cpt. Baker"), recommended that he be barred from reenlisting in the Army, pursuant to Chapter 6 of Army Regulation ("AR") 601–280.[1] Cpt.

---

1. Chapter 6 of AR 601–280 sets forth the procedures and criteria for barring a soldier from reenlistment. The bar to reenlistment is designed to deny reenlistment to soldiers whose immediate separation under administrative pro-

cedures is not warranted, but whose service beyond the date of the expiration of their terms of service is not in the best interest of the Army. This procedure is intended not to punish the soldier, but rather to put the soldier on notice

Baker informed SSG Bruton that the reenlistment bar was based on the fact that the serviceman had received two counseling statements for failure to pay just debts.[2]

The administrative record contains two different copies of Cpt. Baker's recommendation for a bar to reenlistment. One copy indicates that SSG Bruton did not wish to make a statement on his own behalf. This recommendation was not forwarded through the Army's chain of command. The second copy of Cpt. Baker's bar to reenlistment recommendation was forwarded. This second recommendation indicates that SSG Bruton had been counseled on the basis of the bar, had been furnished a copy of the recommendation, and had elected to make a statement on his own behalf. Both recommendation forms carry the signatures of Cpt. Baker and SSG Bruton, dated October 5, 1987. The signatures are not identical, however.

Pursuant to AR 601–280, ¶ 6–5(b)(4), SSG Bruton was required to submit his rebuttal comments within seven days of the initiation of the bar. On November 13, 1987, SSG Bruton's new company commander, Captain Frank A.P. Kau ("Cpt. Kau"), completed and forwarded the recommendation to the battalion commander, because, according to the forwarded recommendation for bar, no statement was submitted. The forwarded recommendation contains the following notation:

> SSG Bruton elected to make a statement on his own behalf, on 5 Oct 87. Today is 13 Nov 87, soldier still has not submitted a statement on his own behalf. SSG Bruton has been furnished the time allowed by AR 601–280, this bar at this time will be forwarded.

Admin.Rec. at 9.[3] The notation is subscribed by what purports to be the signature of Cpt. Baker. He had relinquished command of SSG Bruton's company on October 19, 1987, however, and been replaced by Cpt. Kau. The Board found, as does the court, that Cpt. Kau signed Cpt. Baker's name.

The recommended bar to reenlistment was ultimately approved by the Division Commander, Major General George A. Joulwan, on March 8, 1988. On March 16, 1988, SSG Bruton was counseled by Cpt. Kau and officially notified that he was barred from reenlistment. SSG Bruton's signature appears on the General Counseling Form, acknowledging understanding of the reason for the counseling session. Cpt. Kau noted on the General Counseling Form that, pursuant to AR 601–280, ¶ 6–5(i), he would review the bar to reenlistment to determine whether the bar should be lifted.[4] Cpt. Kau further noted that if the bar remained in effect after the review, SSG Bruton would be administratively discharged.

SSG Bruton disputes that he was properly counselled by Cpt. Kau and denies that he signed the General Counseling Form officially notifying him of the bar to reenlistment. In his affidavit filed July 24, 1995, SSG Bruton contends that the signature page attached to the General Counseling Form is not part of that same document, but rather was taken from another counseling session related to field training exercises held the previous year. Although the General Counseling Form seems to be an official notification to SSG Bruton on March 16, 1988, of his bar to reenlistment, and although Cpt. Kau's signature on this document is dated March 16, 1988, the date March 16, 1987, appears next to SSG Bruton's signature.

Prior to the expiration of the six-month period referred to by Cpt. Kau in the General Counseling Form, SSG Bruton was officially separated from active duty on May 9, 1988, with an honorable discharge pursuant to AR 601–280, ¶ 6–5(f). Under this regulation, soldiers who believe that they will not

---

that he or she is not a candidate for reenlistment and may become a candidate for separation if the circumstances which led to the bar are not overcome.

2. According to paragraph 6–4(d)(6) of AR 601–280, a soldier may be barred from reenlistment if he or she is faced with continuous indebtedness and is either reluctant to repay or makes late payments.

3. "Admin.Rec." refers to the Administration Record filed with this court on June 19, 1995.

4. AR 601–280, ¶ 6–5(i) states that this review will take place "at least 6 months after the date of approval" of the bar to reenlistment.

be able to overcome the substantive charges underlying the bar to reenlistment may apply for an immediate discharge, rather than waiting until the normal expiration of their term of service.[5] Although the Army contends that such an application was made by SSG Bruton, it is unable to locate any documents supporting such a contention. SSG Bruton claims that he did not apply for such a discharge.

The Certificate of Release/Discharge (Form DD–214) cites AR 635–200, ¶ 16–5(b) as the separation authority.[6] It states that the reason for SSG Bruton's separation from the Army was the locally imposed bar to reenlistment. The certificate was signed by SSG Bruton and coded with a reentry code of "RE–4," indicating that he was separated with a nonwaivable disqualification and was ineligible for enlistment.[7]

On March 28, 1989, SSG Bruton filed his first application with the Board, seeking cancellation of the bar to reenlistment. On March 20, 1991, the Board denied his request because he "failed to submit sufficient relevant evidence to demonstrate the existence of probable error or injustice." The Board concluded that:

1. The bar to reenlistment was imposed in accordance with the applicable regulation and there is no reason to remove it from the applicant's records. The [un]fair debt collection practices is an issue that is not under the purview of this Board.

2. The applicant appears to have chosen to request discharge.[8] He could have continued to serve until his ETS [expiration of term of service] or until some action

was taken to separate him prior to his scheduled ETS.

3. The assigned RE–4 code is appropriate and there is no reason to change it.... However, it is noted that under current policy the disqualification may be waived.

4. In view of the foregoing, there is no basis for granting the applicant's request.

Admin.Rec. at 26 (footnote added).

On August 27, 1991, SSG Bruton submitted a second application to the Board, requesting reconsideration of the Board's first decision. SSG Bruton contended that his bar to reenlistment was in error and that he was essentially forced out of the Army. He, therefore, also asked for reinstatement on the ground that his discharge was involuntary. As new evidence, SSG Bruton submitted a written statement from Cpt. Baker in which the captain suggested that the bar to reenlistment recommendation that was forwarded through the Army's chain of command contained a forgery. According to Cpt. Baker, although the recommendation appeared to have his signature on it, he did not remember signing it. Moreover, Cpt. Baker explained that it was very unlikely that he had in fact signed the recommendation because he was no longer SSG Bruton's commander on the date upon which his signature was allegedly placed on the recommendation (November 13, 1987).

On August 26, 1992, the Board reversed its earlier decision by voiding SSG Bruton's bar to reenlistment due to the tampering with the paperwork. It did not, however, find that SSG Bruton's discharge was inappropri-

---

5. The regulation further states that requests for immediate discharge will be processed according to AR 635–200, chapter 16, and that the soldier's DD Form 214 will be coded RE–4, as the discharge was in Bruton's case.

6. As the Board explained, "Army Regulation 635–200 sets forth the basic authority for the separation of enlisted personnel. Chapter 16 covers discharges caused by changes in service obligations. Paragraph 16–5 applies to personnel denied reenlistment and provides that soldiers who receive DA imposed or locally imposed bars to reenlistment, and who perceive that they will be unable to overcome the bar may apply for immediate discharge. An honorable discharge will be given in such cases." Admin.Rec. at 60.

7. In his Affidavit filed on July 24, 1995, SSG Bruton contends that the code "RE–4" is no longer a disqualification from service and is actually a designation that signifies that the soldier is eligible for enlistment with a waiver. Because this contention is irrelevant to the basis of the court's holding, it need not be addressed.

8. In response to SSG Bruton's allegation that the Army could not produce any documentation showing that he had voluntarily requested a discharge, the Board simply noted that administrative regularity is presumed. Admin.Rec. at 24.

ate. Citing the lack of evidence to the contrary, the Board concluded that it was "not convinced that [SSG Bruton] did not voluntarily request discharge" pursuant to chapter 16 of AR 635–200.[9] Admin.Rec. at 62. According to the Board, SSG Bruton acknowledged the accuracy of entries on his Certificate of Discharge (Form DD–214) when he signed it at the time of his separation. In view of these findings, the Board concluded that SSG Bruton's bar to reenlistment should be lifted and that his records should be corrected to reflect an honorable discharge for the convenience of the Government pursuant to paragraph 5–3 of AR 635–200.[10]

SSG Bruton submitted a third application to the Board sometime in 1993, requesting reconsideration of the Board's decision to discharge him from active duty by direction of the Secretary of the Army. Admin.Rec. at 81–84. In this application, SSG Bruton argued that because the Board voided his 1988 bar to reenlistment, his subsequent discharge should have been invalidated as well.[11] SSG Bruton requested reinstatement to active duty, retroactive promotion to grade E–7, back pay, and other allowances.

By decision of January 19, 1994, the Board denied SSG Bruton's requested relief. The Board concluded that SSG Bruton failed to submit sufficient evidence to show that the record was in error or unjust. The Board reiterated the presumption of administrative regularity that automatically attached to SSG Bruton's discharge and noted that SSG Bruton had submitted no evidence suggesting that he had not voluntarily requested dis-

charge in face of the bar to reenlistment. Specifically, the Board stated:

2. The Board has previously determined, that, while the specific reason originally given the applicant for an administrative honorable discharge was in error, the Secretary should invoke his authority for separation of the applicant [for the convenience of the Government] in May 1988.... Nothing the applicant has submitted supports a change to this prior decision.

3. The Board is satisfied that the applicant knew that he had been barred from reenlistment in March 1988. Whether he received the appropriate paperwork is unclear from the record. However, with more than 10 years in the service, the Board believes that the applicant could have found out the procedures for an appeal or contacted his chain of command concerning a lack of receipt of the bar to reenlistment....

. . . . .

12. In view of the foregoing, there is no basis for granting the applicant's requests.

Admin.Rec. at 133–35.

SSG Bruton filed the present action in this court, *pro se*, requesting that his discharge be declared invalid and seeking an award of back pay pursuant to 37 U.S.C. § 204. Although the court initially dismissed SSG Bruton's action as untimely on February 7, 1995, it later vacated that order on March 9, 1995, in order to allow the parties an opportunity to submit additional argument or submissions with respect to tolling of the limitations period.

9. As discussed earlier, this regulation enables soldiers who believe that they will be unable to overcome the substantive charges contained in a bar to reenlistment to apply for an immediate discharge.

10. Pursuant to this Board decision, the Army Reserve Personnel Center corrected SSG Bruton's separation documents on October 5, 1992, to reflect separation by direction of the Secretary of the Army. Moreover, SSG Bruton's reentry code was changed to "RE–2," indicating that SSG Bruton was qualified for reenlistment.

11. SSG Bruton also challenges the bar to reenlistment here on other grounds considered and rejected by the Board. He argues that he was

unable to appeal his bar to reenlistment because his chain of command did not properly advise him of his options and that he did not receive the entire bar to reenlistment packet until May 9, 1988, the date of his discharge from active duty. He also contends that his commander, Cpt. Kau, committed numerous improper actions in an effort to force SSG Bruton to pay off his debts. None of these contentions relate to matters within the court's jurisdiction. The court has no independent basis for reviewing a bar to reenlistment, and, in any event, the Board gave SSG Bruton the relief he was seeking in that regard. Unlike the procedural allegations considered in the text, none of these contentions relates to tolling or the voluntariness of the discharge.

352

## DISCUSSION

■ In general, timeliness is a jurisdictional requirement for claims brought in this court. *Hopland Band of Pomo Indians v. United States,* 855 F.2d 1573, 1576–77 (Fed. Cir.1988). However, this court must have subject matter jurisdiction before evaluating any limitations period question. *Henke v. United States,* 60 F.3d 795, 798, n. 3 (Fed. Cir.1995). Therefore, the motion to dismiss on timeliness grounds cannot be addressed without first considering whether the court has jurisdiction over SSG Bruton's claim. In any event, the two considerations are linked in this case because the primary basis for jurisdiction—the claim that his discharge was involuntary—implicates considerations of tolling the limitations period. In substance, SSG Bruton alleges that procedural irregularities with his bar to reenlistment not only vitiated his consent to discharge and, therefore, made it involuntary, but also concealed the fact that the discharge was actionable. Considering those alleged grounds for tolling the limitations period exposes an additional weakness in the complaint, however, namely, that the discharge was in fact voluntary. As explained below, the court concludes that the only relevant proven procedural irregularity—forgery of Cpt. Baker's name on the bar to reenlistment—did not vitiate SSG Bruton's consent to the subsequent discharge. It follows then that the discharge was voluntary. Because it was voluntary, the court lacks jurisdiction to consider it. Moreover, even if the discharge was actionable, the court finds that the irregularity provides no basis for tolling the limitations period and the action is therefore also untimely.

At the outset, the court is faced with what to do with the allegations that SSG Bruton's signature on the counseling form was forged and that he never applied for discharge. In the absence of either subject matter jurisdiction or of a timely claim, there would be no basis for the court to address those assertions. However, because the asserted procedural irregularities might arguably have some connection with the voluntariness of the discharge and with whether the Army concealed the circumstances of an involuntary discharge, the court will address them on their merits, based on the administrative record.

■ Initially, the court rejects SSG Bruton's explanation for the obviously incorrect date next to his signature on the counseling form of March 16, 1988. The form does not appear to have been altered as the result of combining different documents. The court does not have to accept an illogical explanation, and it is illogical to assume that someone would either forge a signature but then use the wrong date, or would go to the trouble of superimposing a signature but then keep the old date. Nor does it appear likely that the Army fabricated a counseling form in 1988 from an incomplete form signed in 1987, as SSG Bruton suggests. He has not produced a copy of the earlier form, or an affidavit from the non-commissioned officer involved in the earlier counseling. The odds that a counseling form exactly one year old would exist is remote, particularly one that had no signatures on it but SSG Bruton's. The most straight-forward explanation is that SSG Bruton himself misdated the counseling form by accident.

■ The court also concurs with the Board in rejecting SSG Bruton's argument that the absence in the administrative record of a copy of his request for discharge by itself vitiates the discharge. The court is willing to accept the normal presumption of regularity in the administrative process with respect to his discharge papers. It is simply not plausible that Bruton would have signed his discharge papers if he had not first requested a discharge. The court presumes that a request was signed but was subsequently lost.

*The discharge was not involuntary*

■ This court only has jurisdiction over involuntary discharges. *Sammt v. United States,* 780 F.2d 31, 33 (Fed.Cir.1985). SSG Bruton contends that the apparent voluntariness of his discharge was vitiated by the procedural errors associated with the bar to reenlistment. While being threatened with discharge does not vitiate consent to an alternative elective discharge, SSG Bruton is correct that deception can vitiate consent. *See Scharf v. Department of the Air Force,*

710 F.2d 1572, 1574–75 (Fed.Cir.1983); *Taylor v. United States,* 219 Ct.Cl. 86, 92, 591 F.2d 688, 692 (1979); *Christie v. United States,* 207 Ct.Cl. 333, 337–38, 518 F.2d 584, 588 (1975). The circumstances here, however, did not make the discharge involuntary.

■ The fact that the bar may have been procedurally defective did not, and could not, have come into play in SSG Bruton's assessment of the substantive merits of the bar.[12] SSG Bruton had the right to challenge not only the proposed bar to reenlistment, but, under the regulations, he had the right to appeal Gen. Joulwan's final decision to approve the bar. AR 601–280, ¶ 6–5(e). Nor did SSG Bruton have to request a discharge immediately. Captain Kau informed him that six months after the bar, in September 1988, a review would be conducted of the bar to determine if it should be lifted. *See* AR 601–280, ¶ 6–5(i). Thus, SSG Bruton had the option of continuing his service to challenge the proposed bar to reenlistment. Instead, he requested the discharge sometime prior to May 1988, well in advance of both the review date and his scheduled enlistment termination date, January 17, 1990.

■ Under these circumstances, whatever error there was in Cpt. Kau signing Cpt. Baker's name became irrelevant.[13] The bar to reenlistment and the request for discharge are two separate and distinct events. The decision to request a discharge is based on a soldier's belief that he will be unable to overcome a bar to reenlistment. AR 601–280, ¶ 6–5(f). The procedural error would therefore only matter if SSG Bruton had challenged the substantive ground of the proposed bar, namely, that he was not paying his bills. But he did not do so. SSG Bruton assessed his chances of challenging the merits of the bar and came to the conclusion that he would be unable to do so. Any procedural defect in the bar to reenlistment, therefore, does not affect the voluntariness of the discharge. Because the discharge was voluntary, this court is not vested with jurisdiction to hear SSG Bruton's claim.

*The action is untimely*

■ Even if the court found that subject matter jurisdiction existed, the case would have to be dismissed as untimely. SSG Bruton's cause of action accrued when he was armed with facts about the harm done to him. *See United States v. Kubrick,* 444 U.S. 111, 123, 100 S.Ct. 352, 360, 62 L.Ed.2d 259 (1979). The harm in this case is his discharge, which occurred on May 9, 1988. *See Kirby v. United States,* 201 Ct.Cl. 527, 531, 1973 WL 21341 (1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974). The complaint was filed on October 24, 1994, in district court, and was subsequently transferred here. Because the six year limitations period of 28 U.S.C. § 2501 applies, and because SSG Bruton's appeal to the Board does not toll the limitations period, the action would appear to be untimely.[14]

12. SSG Bruton contends that he did not elect to respond to the recommendation for bar and that the notation that he did so elect was further proof of the forgery. If the court adopts SSG Bruton's position that he did not elect to respond to the recommendation for bar, it would merely highlight the lack of prejudicial error resulting from the forged bar.

13. We recognize that the Board has set aside the bar to reenlistment, as it is entitled to do, being able to grant equitable remedies. We hold, however, that the misrepresentation with respect to forwarding the already-initiated recommendation does not have legal consequences for the subsequent discharge. The court holds that Cpt. Kau's forwarding of Cpt. Baker's recommendation is error without legal injury, both with respect to the bar to reenlistment and to the discharge. Despite SSG Bruton's protestations to the contrary, there is no reason to suppose that the result would have been any different if he had known that Cpt. Kau had forwarded the recommendation under Cpt. Baker's signature. Under the applicable regulations, it was Cpt. Kau and not Cpt. Baker who should have endorsed the recommendation. AR 601–280, ¶ 6–5(c). Cpt. Baker was no longer SSG Bruton's company commander. The fact that SSG Bruton has evidence that Cpt. Baker would not have forwarded the recommendation at a time when he was no longer company commander is therefore irrelevant. At the time of the forged signature, Cpt. Kau had the sole authority to endorse the bar and send it up the chain of command for further action. If SSG Bruton had protested the error, Cpt. Kau could simply have signed his own name to the note and forwarded the recommendation.

14. Generally, an injury inflicted by discharge is inherently knowable and the claim accrues all at once for statute of limitations purposes at the time of the separation or discharge. *Mitchell v.*

SSG Bruton alleges, however, that he did not discover until after his discharge that there were procedural errors in both his enlistment bar and therefore, in the discharge proceedings. He contends that his failure to make this discovery constitutes a basis for tolling the limitations period. But it is not sufficient that SSG Bruton merely did not know of his claim. For tolling to apply, he must show that the claim was fraudulently concealed or was inherently unknowable. *Welcker v. United States,* 752 F.2d 1577, 1580 (Fed.Cir.), *cert. denied,* 474 U.S. 826, 106 S.Ct. 83, 88 L.Ed.2d 68 (1985); *Japanese War Notes Claimants Assoc. v. United States,* 178 Ct.Cl. 630, 634, 373 F.2d 356, 358–59, *cert. denied,* 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967).

The court finds that the elements necessary to permit tolling are not present. The claim was neither inherently unknowable nor concealed. The Army made no effort to hide the existence of the recommendation in its final form. As the Board found, SSG Bruton received all documentation related to his bar to reenlistment at his discharge in May 1988. While the irregularity with the recommendation for bar to reenlistment may not be apparent from the face of the form, SSG Bruton knew or should have known by looking at the recommendation that there had been a mistake. He is chargeable with knowing who his company commander is on any given date. He should have known either that Cpt. Baker should not have signed the note on the recommendation, or that it had been improperly forwarded by someone else. Unspecified difficulty with tracking down Cpt. Baker to verify that an error had occurred does not constitute "inherent unknowability" or "concealment."

Moreover, SSG Bruton has taken the position here that the recommendation form ultimately used was in error with respect to whether he elected to respond within seven days. That fact alone should have put him on notice of a basis to challenge the procedures followed. *See Collins v. United States,*

United States, 26 Cl.Ct. 1329, 1331 (1992), *aff'd,* 1 F.3d 1252 (Fed.Cir.1993) (citations omitted); *Lowe v. United States,* 20 Cl.Ct. 693, 694 (1990), *aff'd,* 925 F.2d 1479 (Fed.Cir.1991) (citations omitted). It is also recognized by this court that

14 Cl.Ct. 746, 752, *aff'd,* 865 F.2d 269 (Fed. Cir.1988), *cert. denied,* 492 U.S. 909, 109 S.Ct. 3222, 106 L.Ed.2d 572 (1989).

Since the claim was inherently knowable on May 9, 1988, that is the date his claim accrued. SSG Bruton's claim was filed beyond the six year statute of limitations period and is, therefore, untimely.

*Nonjusticiability*

The Government makes the alternative argument that the Board's recharacterization of the discharge as one for "convenience of the service" makes the claim here non-justiciable. The court disagrees. The cause of action, if any, arose upon SSG Bruton's allegedly involuntary discharge in 1988. The assertion that potentially gives the court jurisdiction is that the discharge in 1988 was involuntary. Nothing that occurred in 1992, when the Board changed the characterization of the discharge, made it less voluntary. While the Secretary of the Army's discretionary exercise of his delegated powers to discharge for convenience of the service may be unreviewable, *see Murphy v. United States,* 993 F.2d 871, 874 (Fed.Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994), it is a fiction to say that is what occurred here. The Board, acting in 1992, well after discharge, merely changed the coding on the discharge papers. Without addressing the question of what would happen if a subsequent recharacterization created a stigma to a previously unobjectionable discharge, the court finds that no new cause of action arose here merely because of the change in coding on his discharge papers.

*The "half a loaf" doctrine*

For the same reason, the court rejects SSG Bruton's related argument under this circuit's "half-a-loaf" doctrine. The Court of Claims has stated that:

[O]nce an administrative body decides relief is proper on the claim and presentation then made, it should not be free to illegally

resort to a correction board is permissive and does not toll the statute of limitations. *Sanders v. United States,* 32 Fed.Cl. 573, 575 (1995); *D'Andrea v. United States,* 27 Fed.Cl. 612, 614, *aff'd,* 6 F.3d 786 (Fed.Cir.1993).

or arbitrarily [award] less relief than that requested by the claimant in that proceeding. In the context of the correction of a military record, this means that once a discretionary decision is made to correct a record, the grant of appropriate monetary relief is not discretionary but automatic.

*Denton v. United States,* 204 Ct.Cl. 188, 195, 1974 WL 21682 (1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1949, 44 L.Ed.2d 449 (1975) (citing *Ray v. United States,* 197 Ct.Cl. 1, 453 F.2d 754 (1972)). The "half-a-loaf" doctrine treats a board decision as the potential source of a new cause of action. For SSG Bruton to succeed under it, he must show that the Board acted illegally or arbitrarily in not extending the effect of the expungement of the bar to reenlistment further to invalidate the discharge. For the reasons already outlined above, however, that argument must fail. The court agrees with the Board that there is no necessary link between the procedural error in the bar to reenlistment and the subsequent voluntary discharge. The Board's failure to grant back pay was therefore neither illegal nor arbitrary.

## CONCLUSION

Because SSG Bruton voluntarily requested a discharge after learning of the proposed bar to reenlistment, this court is not vested with jurisdiction over his claim. Even if jurisdiction existed, the complaint would be dismissed as untimely. Therefore, the defendant's motion to dismiss is granted. Plaintiff's cross motion for summary judgment is denied. The Clerk is directed to dismiss the complaint. No costs.

