Robert S. WILLCOX

v.

The UNITED STATES.

No. 498–82C.

United States Claims Court.

July 27, 1983.

John A. Everhard, Falls Church, Va., for plaintiff.

Allen C. Peters, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant; Major Thomas J. Fiscus and Major Chester H. Morgan, II, Dept. of the Air Force, Washington, D.C., of counsel.

OPINION

HARRY E. WOOD, Judge:

Plaintiff is a former United States Air Force Reserve officer who was involuntarily released from active duty following two nonselections for promotion to the temporary grade of major. He sues to recover the basic pay and allowances of a captain from and after the date of his release from active duty.[1]

Plaintiff was considered for selection for promotion to the temporary grade of major

---

1. A right to additional relief by way of an order directed to the Secretary of the Air Force pursuant to 28 U.S.C. § 1491(a)(2) is also claimed.

by selection boards which convened on September 17, 1973 (the 1974 board) and October 7, 1974 (the 1975 board). He was not recommended for promotion by either board, and was accordingly released from active duty June 30, 1975. He asserts that neither selection board was lawfully constituted, and that his release was therefore invalid. *See Stewart v. United States,* 222 Ct.Cl. 42, 611 F.2d 1356 (1979).

Plaintiff's complaint was not filed until September 30, 1982, more than seven years after his separation.[2] Defendant has moved for summary judgment, contending that the claim is barred by limitations. *See* section 2501, Title 28, United States Code (1976). By way of cross-motion, plaintiff asserts that in consequence of fraudulent government concealment of material facts,[3] this action is timely, and that, on the merits, he is entitled to summary judgment as a matter of law.

Briefing has been completed, and oral argument has been held.[4] For the reasons and under the authorities hereinafter appearing, it is concluded that defendant's motion for summary judgment should be granted, that plaintiff's cross-motion should be denied, and that the complaint should be dismissed.

## I

Throughout the period here relevant, section 266(a), Title 10, United States Code, provided in pertinent substance that each board convened to consider Air Force Reserve officers for selection for promotion "must include 'an appropriate number of

Reserves, as prescribed by the Secretary concerned under standards and policies prescribed by the Secretary of Defense.'" *Stewart v. United States, supra,* 222 Ct.Cl. at 47, 611 F.2d at 1359. *See also* Department of Defense Instruction No. 1205.4, dated June 23, 1959, quoted in *Stewart.* Plaintiff alleges, and at least for present purposes defendant does not deny, that, contrary to the requirements of section 266(a), the 1974 and 1975 boards failed to contain "an appropriate number of Reserves." *See Stewart v. United States, supra.*

A claim under Section 1491, Title 28, United States Code, for monetary relief founded upon an asserted unlawful separation from active military service accrues, within the meaning of section 2501, on "the date of the serviceman's discharge from military service." *Monningh v. United States,* 1 Cl.Ct. 427, 428 (1983); *see also Bonen v. United States,* 229 Ct.Cl. ——, ——, 666 F.2d 536, 539 (1981), *cert. denied,* 456 U.S. 991, 102 S.Ct. 2273, 73 L.Ed.2d 1286 (1982); *Gilmore v. United States,* 228 Ct.Cl. 829 (1981); *Elizey v. United States,* 219 Ct.Cl. 589, 618 F.2d 119 (1979).[5] The claim accrues "all at once," and to be timely, "suit must be filed within six years of the date on which" it so accrues. *Bonen v. United States, supra.*

In certain limited circumstances "the running of the statute will be suspended when an accrual date has been ascertained, but plaintiff does not know of his claim * * *." *Japanese War Notes Claimants Ass'n. v. United States,* 178 Ct.Cl. 630, 634, 373 F.2d

---

2. Plaintiff has not been in active military service following June 30, 1975. *Cf. Bickford v. United States,* 228 Ct.Cl. 321, 656 F.2d 636 (1981). Plaintiff continued to hold a commission as a reserve officer in active status (albeit not on active duty), and is now a major, United States Air Force Ready Reserve.

3. This aspect of the matter requires and will receive explication below.

4. This is one of a considerable number of military pay cases, arising out of *Stewart v. United States, supra,* and involving limitations, presently pending before the court. One such case (*Francis J. Wyborski v. United States,* No. 624–82C) was consolidated for argument with this

case but will be separately decided. Another (*Lawrence H. Hannon v. United States,* No. 454–82C), in which the relevant facts differ slightly, has been separately argued and will also be separately decided, as will *Vincent P. Surwilo v. United States,* No. 255–82C.

5. In both *Gilmore* and *Elizey,* the United States Court of Claims dismissed as time-barred claims of unlawful separation following failures of selection for promotion by selection boards alleged to have been unlawfully constituted. A similar result obtained in this court in *Monningh.*

356, 358–59, *cert. denied,* 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967); *see also Braude v. United States,* 218 Ct.Cl. 270, 273–74, 585 F.2d 1049, 1051–52 (1978); *Fitzgerald v. Seamans,* 553 F.2d 220, 228–29 (D.C.Cir.1977); *Monningh v. United States, supra; cf. Richards v. Mileski,* 662 F.2d 65 (D.C.Cir.1981).

■ A plaintiff's ignorance as to the existence of a claim of which he should be aware is, however, in itself far from enough to extend the statutory period; as a prerequisite to obtaining any such relief, "plaintiff must show either that defendant has concealed its acts with the result that plaintiff was unaware of the existence of a cause of action or that the nature of plaintiff's injury was such that it was inherently unknowable at the time the cause of action accrued." *Coastal Petroleum Co. v. United States,* 228 Ct.Cl. 864, 866 (1981), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1770, 72 L.Ed.2d 174 (1982); *see also Norris v. United States,* 215 Ct.Cl. 961, 962, 566 F.2d 1191 (1977); *Japanese War Notes Claimants Ass'n. v. United States, supra; Braude v. United States, supra.*[6] And, plaintiff bears the burden of proving the existence of an excepting circumstance. *Braude v. United States, supra.*

Plaintiff does not (and could not successfully) contend that his "injury" was "inherently unknowable"; "the injury resulting from a termination of [active military ser-

vice] is obviously 'knowable'." *Braude v. United States, supra; see also Monningh v. United States, supra.* Plaintiff does contend that because of defendant's "fraudulent concealment" from him of the "crucial material fact" of the composition, by component, of the 1974 and 1975 boards, the running of the limitations period was tolled until *Stewart v. United States, supra,* was decided in 1979, and that this action is accordingly not time-barred.[7]

## II

■ Plaintiff's position is basically that in 1974 and 1975, and for some time thereafter, defendant deliberately and fraudulently concealed from him the "crucial material fact" that, in terms of the respective numbers of Regular and Reserve officers appointed to serve as members, the composition of his selection boards did not comport with the requirements of section 266(a).[8] He urges that in the circumstances of this case, dismissal of his complaint as time-barred would be improper.

In support of that position, plaintiff, by way of a declaration having the force and effect of an affidavit, states in substance that until early 1980[9] he had no reason to believe that the 1974 and 1975 selection boards might be improperly constituted; that "until recently the Air Force did not reveal the composition of such boards"[10];

---

**6.** "Fraudulent concealment of significant facts from a claimant tolls the running of [the] statute of limitations." *Marcee v. United States,* 197 Ct.Cl. 363, 367, 455 F.2d 525, 527 (1972); *cf. Beebe v. United States,* 225 Ct.Cl. 715, 716 (1980).

**7.** There is also a naked assertion in plaintiff's brief "of undue influence and pressure to prevent plaintiff from asserting a cause of action within the normal statutory period of limitations in wrongful discharge cases." This charge is not pleaded in the complaint, nor is it factually supported in any way. It merits, and will receive, no consideration herein.

**8.** Specifically, plaintiff asserts "that Reserve officers were not proportionately represented in the membership of the selection boards," and that defendant concealed "the component composition of the selection boards concerned." Section 266(a) refers to "an appropri-

ate number of Reserves," not to directly proportionate Reserve representation. *See Stewart v. United States, supra.*

**9.** Had plaintiff filed this action in 1980, or even in the first 6 months of 1981, the limitations hurdle he now faces would not have existed. Plaintiff did present to the Air Force Board for Correction of Military Records in 1980 the claim he here makes. He does not here assert that doing so either tolled the running of limitations or is in any other way relevant to determining the timeliness *vel non* of this action. *Cf. Gilmore v. United States, supra; Monningh v. United States, supra.* Parenthetically, the matter is apparently still pending before the Board.

**10.** As will be seen, the Air Force adopted the policy of releasing the names of selection board members upon request in 1971; in 1975, the

and that an Air Force Fact Sheet furnished to him in 1973 stated "only that the FY 74 board was composed of 35 colonels whose names are privileged information."[11] That is the factual basis for the argument that the Air Force fraudulently concealed from plaintiff the "component composition of the selection boards * * *."[12] For reasons to be stated, it does not justify the result plaintiff seeks.

The gravamen of the plaintiff's complaint is the concealment of the absence of "an appropriate number of Reserves" from the overall composition of the 1974 and 1975 selection boards that failed to select him for promotion. There is, however, neither a showing nor even any allegation that the Air Force concealed (or made any effort to conceal) the respective *numbers* of Regular and Reserve officers constituting the membership of the said selection boards; plaintiff says only that prior to his release from active duty he was told the *names* of the board members were privileged.[13] In this circumstance, "It just cannot be said that plaintiff's claim was concealed from [him] by defendant * * *." *Oceanic Steamship Co. v. United States,* 218 Ct.Cl. 87, 110, 586 F.2d 774, 787 (1978). That plaintiff may have been unaware that the 1974 or 1975 boards, or both, did not contain an appropriate number of Reserves, or of any rights he

might have in consequence thereof, is simply not enough.

In this connection, it is worthy of note that plaintiff *was* informed his 1974 board included a major general and 35 officers serving on active duty in the grade of colonel.[14] This was a plain, if tacit, indication that the 1974 board contained, at most, only a "few" Reserve members; to quote from plaintiff's brief, "few, if any, [Reserves] are able to achieve the grade of colonel while on active duty." *See Stewart v. United States, supra,* 222 Ct.Cl. at 48–50, 611 F.2d at 1359–60. Viewed in this light, the information respecting the grades of the members of the 1974 board militates strongly against any notion of fraudulent concealment.

The absence of any such concealment is also buttressed by the fact that, in 1975, the Air Force adopted and implemented a policy of publishing the names of officers appointed to serve as selection board members. *E.g.,* the record contains an article, appearing in the AIR FORCE TIMES, December 24, 1975, and reflecting the names of the president "and 39 colonels" comprising the selection board that had convened September 22, 1975, to consider Air Force Regular and Reserve officers for temporary promotion to the grade of major.[15]

It is, of course, to be recognized that plaintiff was not considered by that partic-

---

Air Force adopted the policy of disseminating the names of the members to the public.

**11.** The said Air Force Fact Sheet, attached to plaintiff's declaration, stated that "Board procedures are unclassified and freely discussed. The only items of privileged information are the names of board members and the individual scores of the eligible officers."

**12.** In *Francis J. Wyborski v. United States,* No. 642–82C, the record contains a statement (also appended as an exhibit to plaintiff's brief herein) and an affidavit indicating in substance that plaintiff Wyborski was informed by Air Force officials in about February 1973, and again in about February 1974, that the names of his selection board members were "secret" and were not "available" (in 1973) or "releasable" (in 1974). For present purposes, it may be and is accepted that notwithstanding plaintiff Willcox's failure so to declare, he received similar advice prior to his release from active duty.

**13.** There is no suggestion that plaintiff made any effort prior to 1980 to ascertain whether the composition of the 1974 and 1975 boards satisfied the statutory provision calling for "an appropriate number of Reserves"; nor is there any indication whatever that this information would not have been furnished to him upon request.

**14.** What, if any, contemporaneous advice plaintiff may have received respecting the 1975 board does not appear.

**15.** As defendant accurately observes, given the names of the board members, determination of their components would require no more than a quick reference to the Air Force Register, a document published pursuant to 10 U.S.C. § 122 (1976), and reflecting (among other things) a "USAF Component" for each officer listed.

ular selection board; by that date, he had already been separated from active duty. It is presently significant, however, that, even after the Air Force began publication of the names of its selection board members, the asserted contravention of section 266(a) said to have been earlier concealed from plaintiff did not entirely abate. It is crystal clear, from a multitude of other cases now pending before the court, that the September 22, 1975, temporary major selection board contained 40 or more members, only one of whom was a Reserve line officer.[16] Whatever else may properly be said about the composition of its selection boards, cf. *Stewart v. United States, supra,* the Air Force plainly did not fraudulently conceal (or try to obscure) the "component composition" of those boards in general.

### III

Even if the "component composition" of the 1974 and 1975 boards be defined solely in terms of the *names* of the members, rather than in terms of the respective numbers of Regular and Reserve officers comprising them, a conclusion that defendant "concealed its acts with the result that plaintiff was unaware of the existence of a cause of action * * *," *Coastal Petroleum Co. v. United States, supra,* would still not be appropriate.

For some years prior to 1971, it was the policy of the Department of the Air Force not to release the names of members of Air Force selection boards. The stated reason underlying that policy was to preclude possible harassment of the selection board members. In March 1971, however, the Department of Defense recommended that the

Air Force adopt, and the Air Force thereupon in fact adopted, the policy of releasing the names of Air Force selection board members, upon request.[17]

As the discussion of component composition in Section II hereinabove would indicate, the Air Force's policy concerning release of information with respect to the names of selection board members subsequently underwent still further change. On March 13, 1975, the Secretary of the Air Force approved a staff recommendation that, concurrently with the official release of the results of each centrally convened Air Force selection board, the names of all of the members of that selection board be released for dissemination to the public. That policy was implemented commencing in 1975.

Plaintiff concedes, as he must, that, taken together, the 1971 and 1975 policy decisions provided not only for the release of the names of the members of an Air Force selection board upon a simple request therefor but also, at least with respect to post-1975 selection boards, for the public dissemination of those names. In light of that undeniable fact, it is of no real moment that, prior to 1975, plaintiff may have been informed—albeit incorrectly—that the names of the members of his selection boards were "privileged,"[18] "secret," not "available," or not "releasable." At least from and after March 1975, the names of the members of Air Force selection boards were not only freely available to plaintiff upon request but were published, and from 1971 to 1975 the names of such board mem-

---

16. *E.g., Louis J. DeSandro, Jr. v. United States,* Cl.Ct. No. 612–82C (Complaint, ¶¶ 7–8, Answer, ¶¶ 7–8); *see* also *John A. Bachman v. United States,* Cl.Ct. No. 242–83C (Complaint, ¶¶ 9–10, Answer, ¶¶ 9–10); *Harry F. Grant v. United States,* No. 285–83C (Complaint, ¶¶ 7–8, Answer, ¶¶ 7–8). Judicial notice of the court's own files and records in closely related litigation is entirely appropriate. *See St. Louis Baptist Temple v. Federal Deposit Insurance Corp.,* 605 F.2d 1169, 1172 (10th Cir.1979).

17. The change in policy appears to have been founded upon the belief that, under a proper

interpretation of the Freedom of Information Act, identification of the individual members upon request was appropriate if not required.

18. In the context in which the word "privileged" appeared in the Air Force Fact Sheet, it may, as defendant argues, mean only that "the names would not be published to the general public." That construction, however, seems strained. "Privileged" normally conveys notions of a right not to make a disclosure. That connotation is, moreover, consistent with plaintiff Wyborski's statements under oath.

bers were freely available upon request.[19]

The point to be made is not that plaintiff is necessarily charged with knowledge of the 1971 change in policy, or even of the 1975 change, nor that, to warrant suspension of the running of limitations, plaintiff should be held to a duty to inquire concerning the "component composition" of the 1974 and 1975 boards. The point *is* that, given those policy decisions, the court simply cannot conclude that defendant fraudulently or deliberately concealed the component composition of the 1974 and 1975 boards from plaintiff. It seems very clear that during the times here relevant the Air Force was not wittingly acting in contravention of section 266(a)'s requirements as they would ultimately be judicially defined in 1979, and trying to conceal the illegality, but, rather, that no one was really aware of the problem that subsequently surfaced, and was resolved, in *Stewart v. United States, supra.* No valid basis for equating a mere error of law, declared to be such only long after the fact, with a fraudulent concealment half a decade or so earlier, is suggested, or appears.[20]

Plaintiff endeavors to discount the impact of the fact of ready access, under the Air Force's 1971 and 1975 policy decisions, to the names of selection board members by asserting, on brief, that those decisions "did not provide for disclosure of the *component composition* of selection boards." (emphasis in original). The effort fails. Beyond the absence of any valid factual support for the assertion, it is clear that, given the name of an Air Force officer serving on active duty in the grade of colonel or higher (as were all of the members of plaintiff's 1974 and 1975 boards), determination of that officer's component would require no more than a quick glance at the Air Force Register.[21]

On careful analysis, what plaintiff really contends is that defendant's failure affirmatively to inform him of the names and components of the members of the 1974 and 1975 boards should somehow be equated with deliberate concealment of that information, thereby justifying a prolongation of the period during which he might institute a judicial challenge to his separation from military service beyond the six-year period contemplated by section 2501. That contention is devoid of any merit.[22] This action was filed more than six years after plaintiff's claim first accrued, and no basis for a conclusion that it is not untimely exists.

## IV

The statute of limitations sometimes precludes enforcement of what is otherwise a perfectly valid claim; but that is its very purpose. *United States v. Kubrick,* 444 U.S. 111, 125, 100 S.Ct. 352, 360–61, 62 L.Ed.2d 259 (1979); *Braude v. United States, supra.* The statute is a condition of the waiver of the sovereign immunity of the United States, and in construing and applying it, that fact must be borne in mind. *United States v. Kubrick, supra,* 444 U.S. at 117–18, 100 S.Ct. at 356–57. While no court should narrow that congressional waiver, neither may one undertake "to extend the waiver beyond that which Congress intended." *Ibid.*

Plaintiff's claim is barred by limitations. Accordingly, the complaint must be dismissed.

---

**19.** There is no suggestion that plaintiff ever made such a request; his declaration points to the 1979 decision in *Stewart v. United States, supra,* and the publicity surrounding that decision, as the probable sources of his knowledge concerning the composition of the 1974 and 1975 boards.

**20.** The facts in both *Spevack v. United States,* 182 Ct.Cl. 884, 390 F.2d 977 (1968) and *Marcee v. United States,* 197 Ct.Cl. 363, 455 F.2d 525 (1972), relied upon by plaintiff as requiring that limitations be tolled here, differ so markedly as to render the holdings therein inapposite.

**21.** *See* n. 15, *supra.*

**22.** A failure on the part of the Army "to inform all reserve officers of the lack of reserve representation on their selection boards, * * * or that a potential challenge to their nonselection existed," has been held to be far from the kind of concealment "warranting the tolling of the limitations period." *Gilmore v. United States, supra,* 228 Ct.Cl. at 832; *Monningh v. United States, supra,* 1 Cl.Ct. at 429; *Elizey v. United States, supra.*