Irvin James **HUNTZINGER**

v.

The **UNITED STATES.**

No. 317–85C.

United States Claims Court.

Oct. 23, 1985.

Irvin James Huntzinger, pro se.

Elaine J. Guth, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant. Lt. Col. Joyce E. Peters, Maj. Thomas R. Folk, and Mr. Delbert Bauldock, Dept. of the Army, of counsel.

## OPINION

YOCK, Judge:

In this military pay case, the plaintiff, Irvin James Huntzinger, a former Army officer, instituted an action *pro se* seeking retroactive reinstatement to active duty at the grade of first lieutenant effective June 24, 1960, constructive promotion to the grade of colonel effective July 3, 1981, and recovery of all back pay, allowances and benefits that would flow therefrom. Plaintiff also requests the correction of certain of his Officer Efficiency Reports (OER's) in his Army record and seeks to set aside his 1970 disability retirement. Plaintiff further requests recovery of attorney's fees and costs associated with his claims as well as punitive damages as the Court deems appropriate.

The case is before the Court on the defendant's motion to dismiss, or in the alternative, motion for summary judgment. For the reasons discussed herein, the defendant's motion for summary judgment is granted, and the case is to be dismissed. RUSCC 12(b). The material facts are not in dispute.

### Facts

Mr. Irvin Huntzinger enlisted in the United States Army Air Corps at age 14 on August 29, 1946 using his brother's draft card. He was honorably discharged from enlisted service in the Army on January 25, 1957, and on January 26, 1957, he entered active duty as a second lieutenant, United States Army Reserve. Mr. Huntzinger's first officer assignment was Fort Sill, Oklahoma, where he transferred to the Military Police Corps. In January 1958, Mr. Huntzinger was assigned as a platoon leader in the Marshall Islands but was relieved after two months and given an unfavorable OER. Following his relief, Lieutenant Huntzinger was reassigned to Fort Hood, Texas. While at Fort Hood, Mr. Huntzinger received two other OER's indicating that as a lieutenant he had reached his maximum potential and grade.

In early 1959, Lieutenant Huntzinger was given orders for assignment to Okinawa. At about the same time, plaintiff wrote a 15-page letter (dated January 24, 1959) to the Secretary of the Army, via the commanding general of Fort Hood, Texas, alleging, among other things, that he had been mistreated while at Fort Hood. On February 6, 1959, following receipt of the letter, the commanding general at Fort Hood ordered the inspector general to conduct an investigation into plaintiff's allegations. In addition, Lieutenant Huntzinger's assignment orders to Okinawa were revoked and he was assigned to Fort Dix,

New Jersey, while his allegations were investigated.

During the course of the investigation, the investigating officer uncovered information that contradicted statements made by the plaintiff in his letter to the Secretary, and which were deemed to be prejudicial to plaintiff's character, standing, or efficiency. In view of this information, the plaintiff was given an eight-page letter dated September 11, 1959, detailing his shortcomings, as required by Army regulations, and allowed to comment and rebut the matters contained therein. On October 7, 1959, the plaintiff acknowledged receiving the September 11, 1959 letter and on November 4, 1959, executed a sworn statement in rebuttal to the letter.

On November 18, 1959, the investigating officer completed his report and forwarded it to the commanding general at Fort Hood. The investigating officer's report concluded that the plaintiff's allegations were largely false and malicious, that he was not qualified mentally or morally to be an officer of the Army in any capacity, and that he was not capable of developing the qualities and qualifications required of an officer of the Army. The report, therefore, recommended that the Army revoke the plaintiff's commission and eliminate him from the service. On November 19, 1959, the commanding general at Fort Hood approved the conclusions and recommendations of the investigating officer's report.

On February 15, 1960, the Army provost marshal general (Lieutenant Huntzinger's branch chief) recommended that the Department of the Army Active Duty Board (DAADB) consider the plaintiff's elimination. The DAADB considered several substandard OER's and the November 18, 1959, inspector general's report that contained the recommendation for the applicant's elimination. On March 2, 1960, the DAADB notified the plaintiff of his proposed elimination. On March 19, 1960, the plaintiff filed a letter, seeking reconsideration, with six endorsements from his chain of command, and an application for correction of military records requesting substi-

tution of a favorable OER for the period April 18 to September 15, 1959, for the original OER for that period. The plaintiff based his request upon alleged irregularities in the rating chain contained in the original OER. He requested retention on active duty while his request was considered. Since he had not exhausted his administrative remedies, the application was considered by the Army Board for Correction of Military Records (ABCMR) as a request for appropriate administrative action, and thus forwarded the request to Headquarters, Department of the Army (HQDA) for resolution. Mr. Huntzinger's March 19, 1960 letter caused the DAADB to reconsider its original recommendation. After fully reviewing the evidence before it, the DAADB, on April 2, 1960, reaffirmed its original recommendation that Mr. Huntzinger be released from active duty.

On March 29, 1960, Mr. Huntzinger submitted a complaint to the Department of the Army Inspector General concerning his 1959 OER. Headquarters personnel reviewed his complaint and records and replaced the OER in dispute with a favorable OER. Because of this action, Lieutenant Huntzinger was notified that the DAADB would again reconsider its recommendation to release him from active duty. On June 7, 1960, the DAADB reconsidered plaintiff's corrected records and his March 19, 1960 letter, and again reaffirmed its recommendation that Mr. Huntzinger be released.

Plaintiff was thereafter released from active duty on June 24, 1960.

On December 4, 1962, following his release from active duty, Mr. Huntzinger was promoted to the grade of captain in the Army Reserves. On September 5, 1968, he returned to active duty for a 296–day limited active duty tour. During this limited duty tour, plaintiff was found, after a complete medical examination was performed, to be medically unfit for further active duty service due to a heart condition. The examining physician referred the plaintiff to a medical board, which in turn recom-

mended that plaintiff be evaluated by a Physical Evaluation Board (PEB) to determine his continued fitness for active duty. On October 2, 1969, a PEB found the plaintiff medically unfit for further active duty service and recommended a 20 percent disability rating. Upon the plaintiff's rebuttal and reevaluation thereof, the PEB recommended disability retirement at 30 percent disability. On May 5, 1970, the Army Physical Review Council (PRC) reversed the PEB's determination that plaintiff was 30 percent disabled, and found that he was 20 percent disabled which entitled the plaintiff to severance pay from the service instead of disability retirement. The PRC concluded that the plaintiff's hypertension did not commence while he was on active duty service. Upon appeal and reevaluation by the Army Physical Disability Appeal Board (APDAB), the APDAB on August 13, 1970, reversed the PRC and found the PEB's findings and recommendations of 30 percent disability to be correct in law and fact in plaintiff's case. Thus, on October 1, 1970, the Army released the plaintiff from active duty and placed him on disability retirement at a 30 percent disability rating.

In December of 1969, prior to his disability retirement, Mr. Huntzinger had been recommended for promotion to the rank of major in the Reserves, effective July 12, 1970. However, the Department of the Army revoked the recommendation for promotion after finding that Mr. Huntzinger had been found physically disqualified for retention on the active duty roster prior to promotion to major and that, pursuant to Army regulations, Mr. Huntzinger could not properly be promoted to a higher Reserve rank since he failed to meet the standards of medical fitness for promotion in the Reserves. Following his disability retirement from the Army, Mr. Huntzinger worked as a federal civil service employee until he retired from that job due to physical disability.

In January of 1969, while Mr. Huntzinger was serving in his limited active duty tour, he applied to the ABCMR to have three OER's removed from his personnel file. The ABCMR reviewed his records and denied his application on June 11, 1969. Again, on November 12, 1970, Mr. Huntzinger applied to the ABCMR, asking for promotion to the rank of major, USAR, effective July 12, 1970. The board, after considering his application and record, transferred Mr. Huntzinger to the Retired Reserve in the grade of major, without entitlement to retired pay in this higher grade, pursuant to 10 U.S.C. § 1371 (1982). In July 1979, Mr. Huntzinger again petitioned the ABCMR for reconsideration of his 1969 and 1970 applications. The ABCMR denied this request on May 28, 1980. Then, in December 1981, Mr. Huntzinger again requested reconsideration of his 1969 application. The ABCMR denied this request on July 21, 1982.

In 1983 and 1985, Mr. Huntzinger applied to the ABCMR yet again, challenging his 1960 release and requesting promotion to colonel and punitive damages. The ABCMR denied his most recent request on February 27, 1985, noting that it was untimely since Mr. Huntzinger discovered the alleged error or injustice, about which he complained, in 1960 and since passage of 25 years made the relief he requested impractical.

On May 28, 1985, plaintiff filed a claim in this Court under the Tucker Act, 28 U.S.C. § 1491 (1982) seeking (1) retroactive reinstatement to active duty at the grade of first lieutenant effective June 24, 1960; (2) constructive promotion to the grade of colonel effective July 3, 1981; (3) recovery of all back pay, allowances, accumulated benefits and entitlements since June 24, 1960; (4) correction of 1958–1959 OER's; (5) a setting aside of his 1970 disability retirement; and (6) punitive damages.

Defendant has now moved for summary judgment.

## Discussion

In support of its motion for summary judgment, the defendant asserts that all of the plaintiff's claims are barred by the Court's six-year statute of limitations con-

tained in 28 U.S.C. § 2501 (1982). In addition to the statute of limitations bar, the Government also asserts laches and other affirmative defenses that would preclude the plaintiff from recovering in this action. Since the Court agrees with the Government's statutory bar argument, this Court will limit discussion to that issue.

A. 1960 Release From Active Duty

 Plaintiff's complaint filed May 28, 1985, nearly 25 years after his involuntary relief from active duty on June 24, 1960, is untimely.[1] The statute of limitations, 28 U.S.C. § 2501, bars every claim of which this Court has jurisdiction unless the complaint is filed within six years after such claim first accrues. This Court is a court of limited jurisdiction and Congress has not consented to suits against the United States in this Court if the claim is not filed within the time limited by statute. *Soriano v. United States*, 352 U.S. 270, 273–74, 77 S.Ct. 269, 271–72, 1 L.Ed.2d 306 (1957); *Kirby v. United States*, 201 Ct.Cl. 527, 531 (1973), *cert. denied*, 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974); *Gerber v. United States*, 2 Cl.Ct. 311, 315 (1983). A claim first "accrues" when all events have occurred which affect the alleged liability of the United States and entitles the claimant to institute an action. *Kirby v. United States, supra*, 201 Ct.Cl. at 532; *Japanese War Notes Claimants Ass'n of Philippines, Inc. v. United States*, 178 Ct.Cl. 630, 632, 373 F.2d 356, 358, *cert. denied*, 389 U.S. 971, 88 S.Ct. 466, 19 L.Ed.2d 461 (1967), *reh'g denied*, 390 U.S. 975, 88 S.Ct. 1020, 19 L.Ed.2d 1192 (1968). It is well established that a cause of action for back pay and allowances based on an alleged unlawful military discharge first accrues, and accrues all at once, on the date of discharge. *Bonen v. United States*, 229 Ct.Cl. 144, 148, 666 F.2d 536, 539, *cert. denied*, 456 U.S. 991, 102 S.Ct. 2273, 73 L.Ed.2d 1286 (1981); *Eurell v. United States*, 215 Ct.Cl. 273, 276, 566 F.2d 1146,

1148 (1977); *Kirby v. United States, supra*, 201 Ct.Cl. at 531; *Mathis v. United States*, 183 Ct.Cl. 145, 391 F.2d 938 (1968), *aff'd on reh'g*, 190 Ct.Cl. 925, 421 F.2d 703 (1970); *Willcox v. United States*, 3 Cl.Ct. 83, 84 (1983), *aff'd*, 769 F.2d 743 (Fed.Cir. 1985); *Monningh v. United States*, 1 Cl.Ct. 427, 428 (1983). In this case, the plaintiff's claim based on his involuntary release from active duty accrued on the date of his discharge, June 24, 1960.

It is clear that plaintiff's discharge-related claims accrued far earlier than six years prior to his filing of a complaint in this Court. Therefore, under the normal application of 28 U.S.C. § 2501, these claims must be dismissed. Plaintiff, however, counters defendant's assertion that the claims relating to his 1960 release are barred by the statute of limitations by arguing that two special factual circumstances here toll the statute. These circumstances are first, plaintiff's continual pursuit over a twenty-five year period of his administrative remedies through petition to the ABCMR, and second, the alleged concealment by defendant of material information, bearing upon his 1960 discharge, only recently uncovered by the plaintiff through research pursuant to the Freedom of Information Act. Neither of these circumstances, however, tolls the statute, and all of the plaintiff's claims relating to his 1960 release from active duty must, therefore, be dismissed.

 The statute of limitations is not tolled by plaintiff's various petitions to the ABCMR. The Court of Claims has long held that resort to permissive administrative procedures such as a petition to a corrections board does not toll the statute. *Bonen v. United States, supra*, 229 Ct.Cl. at 148, 666 F.2d at 539; *Bruno v. United States*, 214 Ct.Cl. 383, 386, 556 F.2d 1104, 1106 (1977); *Eurell v. United States, supra*, 215 Ct.Cl. at 276, 566 F.2d at 1148.

---

**1.** The plaintiff's claims concern events on two separate dates, his involuntary discharge from active duty on June 24, 1960, and his subsequent physical disability retirement from the Army Reserves on Oct. 1, 1970. Section A of this opinion discusses the plaintiff's release from active duty in 1960, and Section B discusses the plaintiff's contentions in regard to his disability retirement in 1970.

Plaintiff's argument that the Government withheld vital information from him at the time of his 1960 release from active duty likewise does not toll the statute. Plaintiff's argument is bottomed on the fact that he never did see a copy of the November 18, 1959 inspector general's report that recommended his elimination from the service, prior to his release from active duty in 1960. Plaintiff also alleges that the Army concealed from him the fact that the DAADB considered the inspector general's report in determining whether the plaintiff should be discharged. Plaintiff claims he first saw a copy of the report in 1979 after he filed a Freedom of Information Act request for all his records.

In certain limited circumstances "the running of the statute will be suspended when an accrual date has been ascertained, but plaintiff does not know of his claim * * *." *Monningh v. United States, supra,* 1 Cl.Ct. at 429; *Braude v. United States,* 218 Ct.Cl. 270, 273–74, 585 F.2d 1049, 1051–52 (1978); *Japanese War Notes Claimants Ass'n v. United States, supra,* 178 Ct.Cl. at 634, 373 F.2d at 358–59.

A plaintiff's ignorance as to the existence of a claim of which he should be aware is, however, in itself far from enough to extend the statutory period. As a prerequisite to obtaining any such relief, "plaintiff must show either that defendant has concealed its acts with the result that plaintiff was unaware of the existence of a cause of action or that the nature of plaintiff's injury was such that it was inherently unknowable at the time the cause of action accrued." *Willcox v. United States, supra,* 3 Cl.Ct. at 85.

In order to successfully toll the statute of limitations under a concealment theory, courts have required plaintiffs to plead affirmatively and to show deceptive or fraudulent concealment that induces justifiable reliance and delay in bringing an action. *See Ocean S.S. Co. v. United States,* 218 Ct.Cl. 87, 586 F.2d 774 (1978). The plaintiff has failed to adequately show such concealment.

The administrative record shows that after commencing an investigation arising from plaintiff's allegations of mistreatment at Fort Hood, the inspector general sent plaintiff an eight-page notification letter on September 11, 1959. This notification letter provided in part:

1. The undersigned has been directed to conduct an investigation into the allegations made by you in your letter dated 24 January 1959, through Headquarters, Fort Hood, to the Secretary of the Army.

2. During the conduct of this investigation considerable material was developed in the form of testimony or documentary evidence which contradicted some of the statements made in your letter, or which are prejudicial to your character, standing or efficiency.

3. Paragraph 38, AR 20–1 requires that when evidence prejudicial to the character, standing, or efficiency of any person under the jurisdiction of the Department of the Army is developed during the course of an investigation, an inspector general will, before completing the investigation, orally or in writing make known to the person concerned the exact nature of such prejudicial material. In compliance with this regulation the following material is submitted. (Extract of Paragraph 38, AR 20–1 is attached (Incl 1) for your information and guidance.)

\* \* \* \* \* \*

5. An extract of paragraph 16, TB IG 4, which elaborates on paragraph 38, AR 20–1 is attached as Incl 2. This paragraph requires that I ask you if you desire to submit any further statements or other evidence as contemplated by paragraph 38, AR 20–1. Further, I am required to ask if you desire other witnesses to be called in your behalf. It is requested that you read and thoroughly understand the referenced paragraphs, as well as Article 31 of the Uniform Code of Military Justice. If you have any question as to the intent or meaning thereof, it is recommended you request advice or assistance from the Inspector

General or Staff Judge Advocate of the station to which you are assigned or from the office through which you receive this communication.

Plaintiff acknowledged that he received this notification letter on or about October 7, 1959, and subsequently submitted a signed, written affidavit dated November 4, 1959, to the investigating officer. The letter placed the plaintiff on specific notice that the investigation contained information adverse to him, and advised him in great detail of his deficiencies.

In addition to the September 11, 1959 letter, the plaintiff, of course, was well aware of his past several OER's that were either unsatisfactory or marginally satisfactory.

With all of this in mind, it strains credulity to accept plaintiff's assertion that the Army concealed vital information from him, such that he did not know that he had a claim, when discharged from active duty on June 24, 1960. While the plaintiff may not have seen the investigative report itself, he certainly was aware of the basic matters contained in that investigation. In short, he knew why his records were being reviewed by the DAADB.

It is clear from the record that the Army did not conceal any critical facts that would keep the plaintiff from knowing that he had a claim against the Army on June 24, 1960, the date of his discharge from active duty. Plaintiff was aware at the time of his discharge of the reasons why he was discharged. This information was more than adequate to make plaintiff aware of his cause of action within the six-year statute of limitations period. It goes without saying, of course, that once a lawsuit is filed, the parties have the right of discovery, and any hitherto unknown relevant matters must be and would be released. *See* RUSCC 26–37.

Under these facts, the plaintiff had until June 24, 1966, to file his cause of action in this or its predecessor court. Since the plaintiff did not so file, this Court is now barred by its six-year statute of limitations

from considering the plaintiff's claim for reinstatement to active duty.

### B. 1970 Disability Retirement

The plaintiff's complaint filed on May 28, 1985, also requests relief from his disability retirement awarded to the plaintiff on October 1, 1970. Although Paragraph 14 of the complaint specifically requests that his disability retirement be "set aside," it is clear from the context of the complaint, as well as the plaintiff's response to the defendant's motion for summary judgment, that he only wants such relief if the Court were willing to void his 1960 discharge and place the plaintiff back on active duty. Conversely, he does not want his disability retirement pay tampered with if the Court denies his request for reinstatement. It is also clear, of course, that one cannot be serving on active duty at the same time that one is drawing disability retirement pay. In any event, the plaintiff is saved from the conflict inherent in his complaint for the same reason that his active duty reinstatement request fails. In other words, the six-year statute of limitations bars this Court from considering the plaintiff's disability retirement request on the merits. The plaintiff's disability retirement claim accrued on October 1, 1970, the date the plaintiff was retired on disability pursuant to action of the Army Physical Disability Appeal Board, which was a retirement board competent to pass on plaintiff's eligibility for disability retirement. *Friedman v. United States*, 159 Ct.Cl. 1, 13, 310 F.2d 381, 389–90 (1962), *cert. denied sub nom. Lipp v. United States*, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). *See also Gerber v. United States, supra,* 2 Cl.Ct. at 317. Thus, in order for this Court to have jurisdiction over the plaintiff's disability retirement claim, the plaintiff must have filed his claim before October 1, 1976. Not having done so, the Court is without jurisdiction to consider the plaintiff's disability retirement claim on the merits.

### CONCLUSION

For the reasons discussed above, the defendant's motion for summary judgment is

granted, and the plaintiff's complaint is to be dismissed.