Hud COLLINS, Esq.

v.

The UNITED STATES.

No. 224–87C.

United States Claims Court.

May 19, 1988.

---

Hud Collins, pro se.

Stephen J. McHale, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant. Captain Sarah Merck, Office of the Judge Advocate General, Dept. of the Army, Washington, D.C., of counsel.

## OPINION

MARGOLIS, Judge.

Plaintiff brings this military pay case on appeal from a decision of the Army Board for Correction of Military Records (ABCMR). Plaintiff seeks back pay for the period from 1974 through 1987 in the amount of approximately $175,000. Plaintiff also seeks declaratory relief, equitable relief, and punitive damages. The case now comes before the court on defendant's motion to dismiss and plaintiff's motion for summary judgment. After reviewing the record and after hearing oral argument, the defendant's motion to dismiss is granted, and plaintiff's motion for summary judgment is denied.

## FACTS

On June 3, 1969, after having completed a tour of duty in Vietnam, the plaintiff, Hud Collins, then a First Lieutenant in the United States Army, was released from active duty and, on June 4, 1969, was transferred to the Army Ready Reserve. In July 1970, plaintiff was called back to the Active Reserve. On April 11, 1973, plaintiff elected to remain in the Ready Reserve until August 1, 1974. Effective August 1, 1974, plaintiff was transferred from the Ready Reserve (pay status) to the Army Control Group (Standby Reserve, nonpay status). The reason given for this transfer was "Employment Interfers [sic]."

While serving in the Ready Reserve, plaintiff's Officer Efficiency Reports (OERs) for the periods ending December 31, 1970 and December 31, 1971 were completed more than two years after the close of the reviewing period. In addition, the OER for the period ending July 31, 1974 was never received. Also during this period, plaintiff's name was inadvertently de-

leted from promotion lists in 1972 and 1973, and as a result, he was not considered for promotion in those years. On November 26, 1974, plaintiff, still a First Lieutenant, was not selected for promotion to Captain, and plaintiff was so informed. On April 18, 1975, plaintiff was passed over a second time for promotion to Captain. The letter notifying plaintiff of this second nonselection incorrectly indicated that it was a first nonselection for promotion. As a result of this error, plaintiff was not immediately discharged for being twice nonselected for promotion.

To complicate matters, the Army was under the impression that the plaintiff had not received sufficient retirement credits to maintain active status. On two occasions in 1975, on February 18 and July 9, plaintiff notified the Army that he had sufficient credits and that the Army should check with the 818th Hospital Center to validate the existence of these credits. Evidently, the Army did not contact the 818th and on November 1, 1975, plaintiff was notified that he had not received sufficient Retirement Points for retention in an active status. Plaintiff was informed that this situation would result in discharge unless remedied. On January 6, 1976, plaintiff received a second letter warning him that insufficient points had been earned and discharge was again threatened. On February 27, 1976, the Army discharged plaintiff due to his alleged failure to maintain active status.

Just over a week later, on March 8, 1976, in response to plaintiff's inquiries regarding his nonselection for promotion, the Army, apparently unaware that plaintiff had already been discharged, notified the plaintiff that his nonselection for promotion was a result of not meeting military educational requirements and that a second nonselection may result in a discharge. On March 14, 1976, plaintiff notified the Army that he had in fact satisfied all military education requirements and provided the Army with his graduation form. On March 25, 1976, the Army notified the plaintiff that the March 8 letter had been in error. The Army explained that the selection board was aware of his completion of the

education requirements, but that the reasons for plaintiff's nonselection were unknown. The Army also apparently became aware that the plaintiff had already been twice nonselected for promotion. As a result of the two nonselections for promotion, plaintiff was discharged for a second time on April 7, 1976.

In a veritable comedy of errors, the Army plunged the plaintiff into a bureaucratic morass. Conjuring up images of bureaucracy run amok, on April 13, 1976, following the two immediately preceding discharges, plaintiff received a letter from the Army notifying him that his records had been reviewed and that discharge action would be taken unless the plaintiff made a choice among certain options for retirement. Plaintiff was informed that, failing to qualify for retention or retirement, his removal from service was mandatory effective June 3, 1975.

Evidently, after his second discharge, plaintiff took no other action to contest either of his discharges until June 1981. Although during the period from 1977 to 1979, plaintiff did attend and graduate from law school and later became a member of the bar of the State of Montana. Following law school, plaintiff wrote to the Secretary of the Army on June 20, 1981 seeking reinstatement into active service. Sometime after August 4, 1981, in an undated letter, the Army informed plaintiff that he was ineligible for appointment because he had been twice nonselected for promotion. In 1981, plaintiff filed a Freedom of Information Act request to obtain a copy of his military record. On November 25, 1981, plaintiff was informed that copies of plaintiff's record had been forwarded to plaintiff and that if he desired to contest his discharges an application to the Army Board for Correction of Military Records (ABCMR) was the "last appeal through Military channels, your next appeal would be through the courts."

Upon receipt of his military record, plaintiff discovered the existence of numerous errors in his record. Following the instructions of the November 25, 1981 letter, plaintiff filed an application for review with

the ABCMR on December 2, 1981. In this application, plaintiff complained that due to errors in his record, he had wrongfully been passed over for promotion. Five years and nine months after his first discharge, this ABCMR action was plaintiffs' first challenge to the validity of his discharges.

On March 2, 1983, the ABCMR rendered its opinion denying plaintiff's application. The ABCMR based this decision on the fact that the application had been submitted over three years after the error or injustice was discovered; that some of the plaintiff's OERs were unfavorable; and, that plaintiff had failed to earn sufficient retirement points to maintain active status.

On May 19, 1983, plaintiff requested the ABCMR to reconsider its decision. Plaintiff explained that he discovered the errors in November 1981, and as a result the application was timely. Plaintiff also explained that he had failed to explain properly in his application the nature of the errors present in his record. Plaintiff indicated which OERs were invalid; he also provided documentation showing that he had in fact accrued sufficient retirement points and completed all education requirements. Plaintiff also elaborated on the relief sought: reinstatement to the Army Reserve; transfer to the Judge Advocate General's Corps (JAG); a letter of apology from the Army; and, punitive damages.

In a May 11, 1983 memorandum to the Chief of Staff regarding plaintiff's request for reconsideration, the Deputy Director of Personnel Services indicated that "[a] thorough review of Mr. Collins' record reveals substantial administrative incongruities since his assignment to the USAR in 1969 which may have caused Mr. Collins' non-selection for promotion by the 1974 and 1975 boards." Nevertheless, on June 9, 1983, the ABCMR denied plaintiff's request for reconsideration due to "insufficient relevant evidence to demonstrate the existence of probable material error or injustice." The ABCMR also informed plaintiff that "the only administrative procedure available for relief which you desire is through action by this Board."

Shortly thereafter, plaintiff submitted a second request for reconsideration. In a third request for reconsideration on July 7, 1983, plaintiff sought to amend his prior application to include a request for back pay since 1974.[1] On July 25, 1983, plaintiff made a fourth request for reconsideration.

On August 18, 1983, the ABCMR notified the plaintiff that his application was being administratively processed to determine what relief, if any, was appropriate. In November 1983, the plaintiff travelled to St. Louis, Missouri to meet with representatives of the Army Reserve Center. On December 6, 1983, the Army sent plaintiff a letter concerning discussions that had taken place between representatives of the Army Reserve Components Personnel and Administration Center and the plaintiff on November 16, 1983. The Army concluded that plaintiff had been erroneously discharged for failure to maintain active status; therefore, that discharge was voided. Further, three OERs from 1970, 1971, and 1974 were removed from plaintiff's record because the OERs were invalid. The removal of these OERs constituted a material change in plaintiff's record causing him to be eligible for promotion selection board consideration for the years 1972, 1973, 1974, and 1975. Accordingly, plaintiff was scheduled for selection boards in January, April, September, and November of 1984. If selected for promotion, the discharge of April 7, 1976 would be revoked. As a result of further documentation provided by the plaintiff, the Army credited plaintiff, on January 4, 1984, with two medals and four badges that had also been erroneously omitted from his military records.

On January 23, 1984, the Army informed the plaintiff that all requested corrective

---

1. While the defendant argues that no request for back pay was made before the ABCMR and therefore that the plaintiff cannot make such a request before this court, the record clearly indicates that not only did the plaintiff make such a request, but that the ABCMR was aware of a request for back pay. In a January 23, 1984 letter, the Army Personnel and Administration Center informed the plaintiff that "all requested corrective action has been taken with the exception of ... the authorization of back pay for the period since discharge."

action had been taken except for reinstatement to the Army Reserve and authorization of back pay. On May 10, 1985, prodded by a March 9, 1985 letter from plaintiff inquiring as to what progress was being made, the Army informed plaintiff that his name had been deleted from selection board consideration for September 1984 and November 1984. As a result, the ABCMR ordered that the plaintiff's record be resubmitted to Army Promotion Advisory Boards under criteria established for 1972, 1973, 1974, and 1975. Plaintiff's record was judged under 1972 criteria on February 5, 1985, and plaintiff was not recommended for promotion.

In December 1985, plaintiff again requested information concerning the results of the selection boards. On December 18, 1986, the Army informed plaintiff that he had not been selected under the selection criteria established for 1972, 1973, or 1974, but that the results of the April 17, 1986 promotion board, which applied the 1975 criteria, had been forwarded to the ABCMR for approval.

The ABCMR approved the results of the April 17, 1986 promotion board and on March 19, 1987, plaintiff was notified that the ABCMR had approved his application. Accordingly, plaintiff was promoted to the rank of Captain with an effective date of March 6, 1975 and a date of rank of June 3, 1974. Plaintiff's discharge was voided, and plaintiff was assigned to the Individual Ready Reserve effective March 15, 1987. The Army indicated that the Army Finance and Accounting Center had been notified of the correction. Further, plaintiff would be credited with qualifying service from the date of discharge. An explanation would be inserted in his records to account for the gap, and his military records would be purged of all documents relating to the voided discharge and nonselection for promotion.

On March 25, 1987, plaintiff filed another application for correction of military records seeking promotion to Major, back pay, assignment to the JAG Corps and enrollment in basic and advance JAG training, among numerous other requests. In an attached letter, plaintiff indicated that he was facing a statute of limitations deadline of late May or early June 1987, and he would be forced to file suit in the Claims Court unless the situation could be resolved in the near future.

On April 20, 1987, plaintiff filed a complaint in the Claims Court seeking: back pay; general, special and punitive damages; and equitable relief, which would include, in part, assignment to JAG Corps, appropriate training, and recall to active duty.

In a letter to plaintiff on April 28, 1987, the Army indicated that the ABCMR had taken all action possible within its jurisdiction. The letter confirmed that plaintiff had been promoted to Captain with a date of rank of June 3, 1974. The Army also indicated that plaintiff was eligible for promotion to Major as of June 2, 1981 and that plaintiff would be considered for promotion to Major under the 1981–87 promotion criteria. The Army also indicated that the approved application would be forwarded to the appropriate centers to ascertain retirement points status and resolution of any pay issues. The Army further indicated where the plaintiff could obtain an application for appointment to the JAG Corps. Following the filing of this complaint, the ABCMR denied plaintiff's request for back pay for the period during which plaintiff was discharged.

The defendant has filed a motion to dismiss, arguing that the plaintiff's claim is barred by the statute of limitations and for failure to state a claim upon which relief can be granted. The defendant also contends that the plaintiff did not request back pay from the ABCMR. Plaintiff disputes these arguments and has filed a motion for summary judgment.

## DISCUSSION

### A. *Statute of Limitations*

Defendant asserts that plaintiff's claim is barred by the statute of limitations, 28 U.S.C. 2501, which requires that a suit must be filed in the Claims Court "within six years after such claim first accrues."

The plaintiff argues that the claim accrued, not upon discharge, but rather when plaintiff learned of the numerous errors in his military record and made an application for recall or reappointment as a commissioned officer in June 1981.

■ In the Claims Court, the statute of limitations is jurisdictional and will be strictly construed. *Soriano v. United States*, 352 U.S. 270, 273–74, 77 S.Ct. 269, 271–72, 1 L.Ed.2d 306 (1957); *Williams v. United States*, 3 Cl.Ct. 1, 1 (1983). In this case, plaintiff's discharges occurred in February and April of 1976. Five years and nine months later, on December 2, 1981, plaintiff filed his first application with the ABCMR. It was not until April 20, 1987, a little over eleven years after his discharges, that the plaintiff filed a complaint in this court.

■ For the purpose of determining jurisdiction, a claim first accrues "when all events have occurred which fix the government's liability and entitle the claimant to institute an action." *Steiner v. United States*, 9 Cl.Ct. 307, 310 (1986). In a case challenging an allegedly wrongful discharge, the cause of action accrues all at once upon the discharge. *Kirby v. United States*, 201 Ct.Cl. 527, 531 (1973), *cert. denied*, 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed. 2d 224 (1974); *Williams*, 3 Cl.Ct. at 1–2; *Ellis v. United States*, 1 Cl.Ct. 141, 143 (1983).

■ Plaintiff's argument that his cause of action accrued in June 1981, presumably when he discovered the errors in his record, is not well founded. While the ABCMR allows claims to be filed within three years after a claimant discovers the error or injustice, 10 U.S.C. § 1552, the statute of limitations for this court begins to run in a wrongful discharge case on the date of the discharge, absent affirmative concealment of the facts. *Willcox v. United States*, 3 Cl.Ct. 83, 84–85 (1983), *aff'd*, 769 F.2d 743 (Fed.Cir.1985); *Monningh v. United States*, 1 Cl.Ct. 427, 429 (1983).

■ In the alternative, plaintiff argues that the statute of limitations should be tolled because his claim was "inherently

unknowable" until 1981 and because the "defendant misled, concealed and fraudulently hid from the plaintiff the proper administrative records." Neither of these arguments are compelling.

In *Huntzinger v. United States*, 9 Cl.Ct. 90 (1985), *aff'd*, 809 F.2d 787 (Fed.Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 3267, 97 L.Ed.2d 766 (1987), this court explained:

A plaintiff's ignorance as to the existence of a claim of which he should have been aware is, however, in itself far from enough to extend the statutory period. As a prerequisite to obtaining any such relief, "plaintiff must show either that defendant has concealed its acts with the result that plaintiff was unaware of the existence of a cause of action or that the nature of the plaintiff's injury was such that it was inherently unknowable at the time the cause of action accrued." *Willcox v. United States*, [3 Cl.Ct. 83, 85 (1983), *aff'd*, 769 F.2d 743 (Fed.Cir. 1985) ].

In order to successfully toll the statute of limitations under a concealment theory, courts have required plaintiffs to plead affirmatively and to show deceptive or fraudulent concealment that induces justifiable reliance and delay in bringing an action.

*Huntzinger*, 9 Cl.Ct. at 95. Plaintiff in this case has failed to demonstrate adequately any such concealment. To support this claim of concealment, plaintiff relies primarily on a March 25, 1976 letter from the Army, in which the Army, following a request from the plaintiff, reviewed the reasons for plaintiff's non-selection for promotion. The letter stated, in part, that "[t]here is no evidence of a material error or omission of information from your records which would justify reconsideration of your nonselection." Plaintiff states that he "had no choice but to detrimentally rely on what the Army was telling him." The plaintiff is mistaken. Even if plaintiff was not aware of the exact nature of the errors that were part of his record, plaintiff was clearly aware that he had been discharged and that his discharges had not been routine. The errors in this case so compound-

ed one another and engendered such confusion that plaintiff was put on notice that the proceedings surrounding his discharges were irregular. In fact, believing that errors had occurred, plaintiff states that he "started to question the situation in 1972 when no promotion came through and again in 1973 and 1974 continued efforts to try to find out why [he] was not promoted." The record also indicates that plaintiff wrote the Army on March 14, 1976 questioning the circumstances of his second nonselection for promotion.

■ Having knowledge that his discharges were most irregular, plaintiff did not have to rely on what the Army was telling him, he could have challenged the discharges. For whatever reason, plaintiff chose not to do so. Further, the plaintiff has not come forward with sufficient evidence that the Army fraudulently concealed information from the plaintiff. It is true that the Army was incredibly confused about plaintiff's status and also that the plaintiff's records were not properly constituted, but the record does not indicate that the Army sought to conceal any information from the plaintiff. Mere administrative confusion, without more, does not constitute fraudulent concealment.

■ Also, this case does not involve an "inherently unknowable" injury. A nonselection for promotion or a discharge results in an immediate injury. "The injury resulting from a termination of employment is obviously 'knowable.'" *Braude v. United States*, 218 Ct.Cl. 270, 274, 585 F.2d 1049, 1051–52 (1978); *Willcox*, 3 Cl.Ct. at 85. Upon his discharges, plaintiff was on inquiry that he had a potential claim. At that point, he could have appealed his nonselection and his discharges to the ABCMR or to this court. Plaintiff chose to take no action whatsoever from 1976 to 1981 until almost six years had elapsed since his discharges.

■ Further, despite plaintiff's protestations otherwise, the statute of limitations is not tolled or deferred during a plaintiff's administrative appeals. Resort to an administrative forum, such as the ABCMR, is a permissive step that does not toll the running of the statute of limitations. *Bruno v. United States*, 214 Ct.Cl. 383, 386, 556 F.2d 1104, 1106 (1977); *Steiner*, 9 Cl.Ct. at 310; *Ellis*, 1 Cl.Ct. 143–44. Because plaintiff did not bring suit in this court until April 20, 1987, over eleven years after the cause of action arose, plaintiff's claim is barred by the statute of limitations.

■ Plaintiff argues, however, that "once a discretionary decision is made to correct a record, a grant and appropriate money relief is not discretionary but automatic." Therefore, plaintiff asserts that a new cause of action accrued upon the ABCMR's action in 1987.

Under the so-called "half-a-loaf" doctrine, a new cause of action may arise when the ABCMR grants relief to a plaintiff. *DeBow v. United States*, 193 Ct.Cl. 499, 503, 434 F.2d 1333, 1335 (1970), *cert. denied*, 404 U.S. 846, 92 S.Ct. 150, 30 L.Ed. 2d 84 (1971); *Lee v. United States*, 7 Cl.Ct. 654, 657 (1985). In *Denton v. United States*, 204 Ct.Cl. 188, 195 (1974), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1949, 44 L.Ed. 2d 449 (1975), the Court of Claims explained:

> [A] major reason for allowing a cause of action to be based on an initial favorable administrative determination, that would otherwise be barred by limitations, is that once an administrative body decides relief is proper on the claim and presentation then made, it should not be free to illegally or arbitrarily award less relief than that requested by the claimant in that proceeding. In the context of the correction of a military record, this means that once a discretionary decision is made to correct a record, the grant of appropriate monetary relief is not discretionary but automatic. *Ray v. United States*, 197 Ct.Cl. 1, 453 F.2d 754 (1972). If appropriate payment is not then made, a cause of action accrues in this court at that time.

In the case at hand, however, the ABCMR did not act illegally or arbitrarily in refusing to award plaintiff back pay for the period from 1974 through 1987. In this case, it is not appropriate that plaintiff

receive monetary relief to compensate him for alleged back pay. Plaintiff is mistaken in his belief that a change in records always requires the award of back pay. The key to the half-a-loaf doctrine are the words *"appropriate* monetary relief." This is not a case in which the servicemember was wrongfully discharged from active service. On August 1, 1974, plaintiff was transferred from the Ready Reserve to the Standby Reserve, a *non-pay* status. Plaintiff indicates that this transfer was involuntary, but there is no evidence to indicate that plaintiff challenged the transfer either in 1974 or later in his numerous applications to the ABCMR.[2] When plaintiff was discharged a year and a half later, he was still in this non-pay status. The ABCMR ordered plaintiff promoted to Captain effective March 6, 1975, which is during the period plaintiff was in the Standby Reserve. Therefore, the ABCMR's action in voiding plaintiff's discharges and retroactively promoting plaintiff to Captain does not result in the plaintiff's right to back pay for the period from 1974 through 1987. Hence, the ABCMR did not act arbitrarily, capriciously or contrary to law in denying plaintiff back pay. The court has considered plaintiff's other arguments and found them to be without merit.

### B. *Failure to State a Claim*

 Defendant's final argument in support of its motion to dismiss is that the ABCMR has granted virtually the entire relief requested by plaintiff. This court has no authority to award punitive damages; it cannot order plaintiff to be promoted; and it cannot order plaintiff to be assigned to the JAG Corps or its attendant educational courses. *See Voge v. United States,* 844 F.2d 776, 780–82 (Fed.Cir. 1988). Therefore, these claims are dismissed for lack of jurisdiction.

### CONCLUSION

The court empathizes with the plaintiff having to run the gauntlet through an in-credible amount of inexcusable bureaucratic confusion, both in the early 1970s and again from 1981 through 1987. Nonetheless, plaintiff's cause of action accrued upon his discharges. It is understandable that plaintiff was confused by the circumstances of his discharges; nevertheless, such confusion does not toll the statute of limitations. Moreover, plaintiff has not presented sufficient evidence that the defendant fraudulently misled the plaintiff or concealed records from the plaintiff.

On notice that administrative irregularities had occurred, plaintiff sat on his rights for five years and nine months without taking any action whatsoever. When the plaintiff first took administrative action challenging his discharges, the statute of limitations had almost run. Further, plaintiff's appeal to the ABCMR did not toll the running of the statute of limitations. Thus, because plaintiff's claim was filed over eleven years after the cause of action first accrued, it is barred by the statute of limitations. Accordingly, the defendant's motion to dismiss is granted. Plaintiff's motion for summary judgment is denied. The Clerk will dismiss the complaint. Each party will bear its own costs.

---

**2.** To the extent plaintiff challenges this transfer in his motion for summary judgment, the court may not entertain such argument. Such a challenge clearly runs afoul of the statute of limitations. Further, it is well settled that "a party cannot raise an issue on appeal to a court when it failed to raise it before an administrative agency competent to hear it." *Doyle v. United States,* 220 Ct.Cl. 285, 311, 599 F.2d 984, 1000 (1979), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980).